# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-03063-CNS-KAS

Brock Wisne,
Aidan Shaw,
Aislin Malcolm,
Cade Tyson,
Abigail Jefferies,
Anthony Johnson,
Louie Jordan,
Jefferson De La Cruz Monegro,
Isaiah Jones,
Dimond Loosli,
Brett Griffiths, and
Jake Morell on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

National Collegiate Athletic Association,

Defendant.

---

**AFFIDAVIT OF GEOFF SILVER**

---

**IN THE COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | | |
|---|---|---|
| Filip Borovicanin, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. A2603352 |
| | ) | |
| v. | ) | Honorable Christopher A. Wagner |
| | ) | |
| National Collegiate Athletic Association, | ) | |
| | ) | |
| Defendant. | ) | |

---

**AFFIDAVIT OF GEOFF SILVER**

---

State of Indiana )
County of Marion )

I, Geoff Silver, being duly sworn, depose and state as follows:

**A. <u>Personal Background</u>**

1. I am the Vice President of Division I Governance and Member Services at the National Collegiate Athletic Association ("NCAA"). Except as otherwise noted, this Affidavit is based on personal knowledge that I have acquired in the ordinary course of employment and to which I could testify in court.

2. I have worked for the NCAA for over twenty years and have held my current position on a non-interim basis since November of 2025. In this role, I lead NCAA national office staff on issues and cases impacting student-athlete eligibility. I also provide primary staff leadership to the NCAA Division I Cabinet and other committees in the governance structure.

3. Based on my experience, I am familiar with the NCAA Division I ("DI") bylaws (the "Manual" or the "Bylaws"), as well as the policies and procedures governing student-athlete eligibility.

**B. <u>The NCAA and the DI Manual</u>**

4. The NCAA is a voluntary, self-governing association composed of member colleges, universities, and athletic conferences across the country that come together to administer college athletics. For nearly a century, NCAA member schools and conferences have adopted rules to determine the eligibility of student-athletes to participate in intercollegiate athletics.

5. The NCAA is led by its nearly 1,100 member schools, all of which are four-year institutions. Across all divisions, approximately 500,000 student-athletes compete in NCAA-sanctioned sports. In DI alone, more than 180,000 student-athletes represent approximately 350 member schools across 26 sports.

6. Each Division promulgates its own rules and operating guidelines through an established legislative and governance process. Changes to these rules and operating guidelines require legislative action.

7. The policies and rules governing collegiate sports reflect a consensus of views that are as diverse as the NCAA's membership.

8. DI is currently composed of approximately 350 member colleges and universities that are primarily grouped into conferences. The DI Manual sets out the fundamental policies and rules that govern DI athletic competition for more than 180,000 student-athletes. Each year, representatives of the DI member schools establish and adopt the rules embodied in the DI Manual.

9. The NCAA has approximately 500 employees (often referred to as "national office staff") who work from the NCAA's headquarters in Indianapolis, Indiana to provide professional support and resources for member institutions. The NCAA has no employees in Ohio.

10. It is a common misconception that the NCAA national office staff promulgates its eligibility rules and verifies all student-athletes' compliance therewith, but that is not the case.

NCAA member institutions control the promulgation and enforcement of NCAA eligibility rules. The NCAA's role in this area is to provide administrative support to the member institutions so they can carry out these functions.

11. Since 1906, NCAA members have adopted rules regarding the eligibility of student-athletes to participate in intercollegiate sports. A version of the manual has existed for over a century. Prior to the creation of the NCAA's three Divisions—a process known as "federation"—there was a single manual covering all schools. In 1973, the three Divisions were created.

12. The 2025–26 DI Manual is divided into three sections: the NCAA Constitution (Articles 1–6), the Operating Bylaws (Articles 8–23), and the Administrative Bylaws (Article 31).

## C. The Five-Year Rule

13. The DI athletics eligibility rules contained in the DI Manual determine who competes, against whom they compete, and under what circumstances they compete at the DI level.

14. Bylaw 12.6 of the 2025–26 DI Manual, referred to as the "Five-Year Rule," governs student-athletes' period of eligibility. It provides:

> **Bylaw 12.6 Seasons of Competition: Five-Year Rule.** A student-athlete shall not engage in more than four seasons of intercollegiate competition in any one sport (see Bylaws 12.02.6 and 14.3.3). An institution shall not permit a student-athlete to represent it in intercollegiate competition unless the individual completes all seasons of participation in all sports within the time periods specified below:
>
> **Bylaw 12.6.1 Five-Year Rule.** A student-athlete shall complete the student-athlete's seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution, with time spent in the armed services, on official religious missions or with recognized foreign aid services of the U.S. government being excepted. For international students, service in the armed forces or on an official religious mission of the student's home country is considered equivalent to such service in the United States.

15. In essence, the Five-Year Rule permits student-athletes to compete in up to four seasons of collegiate athletic competition during their five-year period of eligibility, which

commences upon full-time enrollment at a collegiate institution. The period of eligibility contained in the Five-Year Rule can be extended subject to various forms of waivers provided in the Bylaws, including extension of eligibility waivers (Bylaw 12.6.1.7), hardship waivers (Bylaw 12.6.4), season of competition waivers (Bylaw 12.6.5–12.6.6), and legislative relief waivers (Bylaw 9.3.1.3). The circumstances under which these waivers are warranted are defined in the 2025-26 DI Manual. From academic year 2022-23 to 2025-26, the Five-Year Rule did not materially change.

## D. <u>The Age-Based Eligibility Model</u>

16. On June 22, 2026, the NCAA DI Cabinet—the twenty-member body that exercises day-to-day decision-making authority for DI athletics on various matters, including athletics eligibility, and which is comprised of member representatives including athletic directors, conference commissioners, faculty representatives, and student-athletes—voted to implement a new age-based eligibility model for DI sports. The new model will become part of the 2026-27 NCAA DI Manual.

17. Under the new model, NCAA eligibility will be primarily age-based. Student-athletes may receive a five-year eligibility period beginning at the start of the academic year following their 19th birthday or upon full-time enrollment at a collegiate institution, whichever comes sooner, and student-athletes may compete during that five-year period of eligibility provided they meet all other eligibility requirements. Waivers have been eliminated under these new rules other than in clearly defined cases involving pregnancy, military service, and religious missions.

18. The NCAA DI Cabinet enacted the new age-based eligibility model through the process for amendment to the Manual outlined in Bylaw 9.2.

19. I provided guidance to NCAA governance committees during their consideration and enactment of the age-based eligibility model over several months. In April 2026, the Division I Board of Directors directed the Division I Cabinet to advance the age-based eligibility concept. In so doing, it expressed support for the age-based rule taking effect for the 2026-27 season, and for the existing Five-Year Rule to control eligibility for student-athletes whose eligibility was or would be completed by Spring 2026.

20. When it voted to formally adopt the age-based eligibility rule, the Cabinet followed the Board's guidance and made the deliberate decision not to apply the new age-based eligibility model retroactively (*i.e.*, it does not apply to student-athletes whose eligibility expired following the 2025-26 academic year). The Cabinet's decision on this topic, like its approval for the age-based eligibility rule more generally, was unanimous.

21. As the Cabinet recognized, applying the age-based eligibility model retroactively would destabilize college sports. In most sports, member institutions have already decided who will be on their rosters for the 2026-27 academic year. Student-athletes have decided which schools to remain at, transfer to, or initially attend based on their expectation that a roster spot, and potentially playing time and revenue-sharing authorized by the class-action settlement in *House v. NCAA*, No. 4:20-cv-03919-CW (N.D. Cal.) (the "*House* Settlement"), will be available to them. These opportunities are all zero-sum. The NCAA Bylaws cap the number of roster spots for each sport (*see* Bylaw 17.2), the minutes of playing time available to participants in an athletic contest are fixed, and the *House* Settlement caps the revenue share payments that an institution may pay to student-athletes in a given year. If a new class of student-athletes is retroactively made eligible at the eleventh hour, it will create roster chaos. It will also fundamentally upend the settled reliance interests of hundreds of thousands of student-athletes and institutions who operated in reliance on

the age-based rule not applying retroactively. Many student-athletes would likely lose the opportunities that have been made available to them as a result, all to benefit a group of student-athletes who have received all of the seasons of eligibility to which they were entitled under the rules in effect for their entire collegiate careers.

22. The Division I Cabinet made a statement respecting its decision to not make the age-based eligibility rule retroactive, which is attached as **Exhibit A**.

**E. The Transfer Portal**

23. The NCAA "transfer portal" further complicates any potential retroactive application of the age-based eligibility rule. Under the NCAA's transfer rules, if a student-athlete wishes to transfer between institutions, they must enter the transfer portal during a designated period of time. For men's basketball athletes who sought to transfer in advance of the 2026-27 academic year, they were required to enter the portal between April 7, 2026 and April 21, 2026. For women's basketball, student-athletes were required to enter the portal between April 6, 2026 and April 20, 2026.

24. If the new age-based eligibility model were to apply retroactively, incoming and existing student-athletes who lose their roster spots to newly-eligible fifth-year student-athletes would not be able to enter the transfer portal.

25. The NCAA's transfer rules impose material sanctions on institutions that roster student-athletes who did not enter the transfer portal. These transfers, colloquially referred to as "ghost transfers," come with substantial penalties. The head coach of a team that rosters a "ghost transfer" student-athlete must serve a suspension for 50% of the regular season, and the institution must pay a fine equivalent to 20% of the sport's athletic budget. Ghost transfers are heavily penalized because they are often the result of tampering with another institution's roster. The

NCAA's membership adopted these penalties to try to discourage circumvention of roster management rules, and efforts to undermine the integrity of the recruitment process.

## F. Plaintiffs' Eligibility Status

26. Each of the Plaintiffs in this lawsuit exhausted the period of eligibility provided in the 2025-26 DI Manual following the 2025-26 academic year. I have inquired whether any institution sought a waiver on behalf of these student-athletes prior to initiating suit, and whether the Plaintiffs entered the transfer portal. A table summarizing the answers to these questions follows. The student-athletes who purport to have roster spots available to them are identified in bold:

| Plaintiff | Eligibility Waiver | Transfer Portal (Y/N)[1] |
|---|---|---|
| **Filip Borovicanin** | Submitted by Xavier University (Denied) | Y |
| Malik Messina-Moore | None | Y |
| MJ Collins Jr. | None | Y |
| **Kolby King** | None | N |
| Javon Bennett | None | Y |
| Chevalier Emery Jr. | Submitted by Cleveland State University (Denied) | Y |
| Jalen Quinn | None | Y |
| **Savannah White** | Submitted by Xavier University (Denied) | Y |
| Donovan Brown | None | Y |
| **Christian Henry** | Submitted by Fordham University (Denied) | Y |
| Ziare Wells | None | Y |
| Cristian Carroll | None | Y |
| Shawn Phillips Jr. | None | N |
| Caden Powell | None | N |
| Josh Reed | None | Y |

## G. The Professional Participation Rules

[1] Student-athletes may enter the transfer portal even without eligibility remaining so that they may transfer in the event they later become eligible.

27. I understand that Plaintiffs have raised complaints about the Bylaws governing participation in NCAA sports by student-athletes who allegedly previously played professional sports. Those Bylaws are not germane to Plaintiffs because none of the Plaintiffs previously engaged in such competition, and therefore those Bylaws do not apply to them.

28. Nevertheless, Plaintiffs appear to mischaracterize those Bylaws.

29. The Bylaws in the 2025-26 DI Manual governing participation in DI sports by former professional sports participants create two categories of student-athletes: those who participate in professional competition *before* their initial full-time college enrollment, and those who participate in professional competition *after* their initial full-time college enrollment. Student-athletes who participate in professional competition before their initial full-time college enrollment may be eligible to participate in collegiate competition if they never received compensation above the actual and necessary expenses related to their professional sports participation. Student-athletes who enroll full-time in college, unenroll, participate in professional competition, and attempt to return to DI athletics are *not* eligible for competition.

30. Specifically, Bylaw 12.2.4 generally disqualifies an individual from participation in collegiate athletics after he or she enters into a contract to play professionally in his or her chosen sport. That Bylaw states:

> **12.2.4 Contracts and Compensation.** An individual shall not enter into any kind of agreement to compete in professional athletics, either orally or in writing, regardless of the legal enforceability of that agreement.

31. Bylaw 12.02.7 defines a professional athletics team as follows:

> **12.02.7 Professional Athletics Team.** A professional team is any organized team that:
>
> (a) Provides any of its players more than actual and necessary expenses for participation on the team, except as otherwise permitted by NCAA legislation; or

(b) Declares itself to be professional.

32. Bylaw 12.2.4.1 provides the lone exception to Bylaw 12.2.4, and it applies only in circumstances where an individual signs a professional contract before full-time enrollment at a collegiate institution. The Bylaw states:

> **12.2.4.1 Exception -- Before Initial Full-Time Collegiate Enrollment.** Before initial full-time collegiate enrollment, an individual may enter into an agreement to compete on a professional team (per Bylaw 12.02.4), provided the agreement does not guarantee or promise payment (at any time) in excess of actual and necessary expenses to participate on the team.

33. The Bylaws provide no exception for an individual who has enrolled at a collegiate institution and then enters into a professional contract.

34. Similarly, Bylaw 12.3.2.2 prohibits student-athletes—after initial full-time college enrollment—from entering a professional draft (subject to certain exceptions), but the rule does not render ineligible someone who entered the draft before initial full-time college enrollment so long as they do not ultimately sign a professional contract.

35. The same distinction applies in the Bylaws prohibiting student-athletes from competing with professionals. (*See* Bylaws 12.2.2.2 and 12.2.2.21) (prohibiting competition with professionals in a student-athlete's chosen sport, but excepting competition before initial full-time college enrollment "provided the individual does not receive more than actual and necessary expenses to participate on the team.").

36. Under the Five-Year Rule, when a student-athlete participates on a professional team prior to full-time collegiate enrollment, any competition in the year immediately following the student-athlete's graduation from high school does not count as a season of competition. (*See* Bylaw 12.6.3.2.1) (referred to in the Bylaws as a "legislated grace period"). For each year thereafter in which a student-athlete participates in competition with professionals, the season

counts against the student-athlete's eligible seasons of competition. (*Id.*) I note that this type of season-counting is no longer necessary under the age-based eligibility rule.

37. To calculate the seasons of competition with which to charge a former professional, the 2025-26 DI Manual provides a formula that considers the number of contests in which a student-athlete competed within each twelve-month period following the above-described legislated grace period. If a student-athlete competes in more contests in said twelve-month period than would otherwise be played in a collegiate season, they are charged with one season of competition for that twelve-month period. (*See* Figure 12-2.)

**H. <u>The COVID Waiver</u>**

38. I understand that Plaintiffs have compared themselves to student-athletes who received an additional season of eligibility to participate in competition as a result of the "COVID Waiver." That comparison appears inapt.

39. COVID-19 created significant uncertainty for collegiate athletics, particularly during the 2020-21 academic year. Individual member institutions and athletic conferences made independent decisions about how to modify and adjust their COVID-impacted seasons depending on the circumstances for their own communities, teams, campuses, and conferences. The COVID pandemic was an unprecedented time, and the COVID-impacted seasons were unlike any other time in collegiate athletics, before or since.

40. To address these impacts, the NCAA Division I Council and Board of Directors approved a COVID waiver permitting institutions to self-apply a season-of-competition and one-year extension of eligibility waiver for the 2020-21 seasons. For any student-athlete who was on an intercollegiate athletic team impacted by COVID, the student-athlete's season of competition in that sport did not count towards the student-athlete's four seasons of competition or five years of

eligibility.

41. The guidance from the Division I Council to the NCAA membership made clear that this was a restoration of a season of competition for those who participated in the COVID-impacted seasons that were filled with uncertainty and disruptions. The guidance was clear that this was not a decision that all current or future student-athletes would get five seasons of competition. Put simply, the COVID-impacted season did not count against players who participated in it, but it did not represent a wholesale change to the DI eligibility rules.

FURTHER AFFIANT SAYETH NAUGHT.

Geoffrey Strong Silver

________________________________

Geoff Silver

SWORN TO AND SUBSCRIBED before me this the 29 day of June, 2026.

________________________________

Notary Public

My commission expires:

Notarized online using audio-video communication technology

Tammy M LaPointe-Potter
Electronic Notary Public
State of Indiana
Commission #: NP0722719
My commission expires Oct 01, 2027

# EXHIBIT A

X

← **Post**

**NCAA News**
@NCAA_PR

DI Cabinet statement regarding Age-Based Eligibility Rule:

"In April, while the Age-Based Eligibility Rule was still under consideration, the NCAA Division I Board of Directors, informed by the Division I Cabinet and by DI student-athlete leaders made clear that its intent was for any rule change to apply going forward, and not retroactively to student-athletes whose eligibility is or will be completed by the spring of 2026 to avoid the impact retroactive application would have on other student-athletes. The cabinet's unanimous decision and the NCAA Division I Student-Athlete Advocacy Committee's unanimous support for the change represents our considered judgment about what is best for college sports.

Student-athletes who will exhaust their eligibility this year have received the full period of eligibility permitted by NCAA bylaws and the life-changing benefits college sports provides. Giving those student-athletes another season would destabilize rosters just ahead of the coming season by disrupting settled expectations of countless student-athletes regarding their expected roster spots and playing time next year, including incoming freshmen who are eager to participate in the life-changing experience of college athletics.

The Division I Cabinet, which includes representatives from all autonomy conferences, was unanimous in its decision and while we are aware of lawsuits challenging this policy decision, we do not intend to change course."

10:25 PM · Jun 24, 2026 · **182.8K** Views

17 58 121 35

**Read 17 replies**

Don't miss what's happening
People on X are the first to know.
Log in Sign up