**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-03063-CNS-KAS

Brock Wisne,
Aidan Shaw,
Aislin Malcolm,
Cade Tyson,
Abigail Jefferies,
Anthony Johnson,
Louie Jordan,
Jefferson De La Cruz Monegro,
Isaiah Jones,
Dimond Loosli,
Brett Griffiths, and
Jake Morell on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

National Collegiate Athletic Association,

Defendant.

---

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [ECF No. 20]**

---

## INTRODUCTION

Seven days after filing their Complaint—before the NCAA's response and without *any* discovery—Plaintiffs seek to certify a mandatory nationwide class under Rule 23(b)(2). They request the Court bind absent class members without any notice based on a single declaration from Plaintiffs' counsel and a merits declaration from a retained expert that does not address class certification. Not one of the twelve proposed class representatives submitted a declaration in support, and eight have submitted nothing at all. This record simply cannot support the "rigorous analysis" Rule 23 demands. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).

The defects run deeper. Plaintiffs never acknowledge the individualized eligibility determinations—such as the fact that some student-athletes attended non-NCAA institutions and/or qualified for injury or hardship waivers—that resolving each class member's claims will require. Indeed, Plaintiffs, who themselves span at least four materially different eligibility paths, illustrate the problem rather than solve it.

Each Rule 23(a) requirement fails. Claims like Plaintiffs' are already being litigated one athlete at a time, defeating numerosity as individual litigation is not merely practicable but ongoing. Commonality rests on abstract questions—"[w]hether Defendant violated the antitrust laws," ECF No. 1 ¶ 58(a)—of exactly the kind *Dukes* held insufficient. Far from proving typicality and adequacy, Plaintiffs' allegations show they have atypical claims, and the requested injunctive relief would pit class members against one another by benefiting some at the expense of others.

In addition, Plaintiffs propose a two-step certification structure that subordinates absent members' interests to theirs. The Complaint demands compensatory, exemplary, treble, and punitive damages for the class. ECF No. 1 at 35. Yet the motion reserves all monetary claims for a later Rule 23(b)(3) motion, while asking the Court to litigate liability now for a mandatory class

whose members would be bound by any adverse ruling without ever receiving notice or a chance to exit. ECF No. 20-1 at 1 n.2, 12 n.9. *Dukes* rejected the use of Rule 23(b)(2) to adjudicate claims that are, in substance, monetary while bypassing Rule 23(b)(3)'s protections. Representatives willing to place strangers' damages claims at preclusive risk to accelerate their own injunction are not "fairly and adequately protect[ing] the interests of the class" under Rule 23(a)(4).

Moreover, Rule 23(b)(2) is the wrong vehicle—no single injunction would "provide relief to each member of the class," because whether any athlete competes in 2026–2027 depends on athlete-specific eligibility adjudications. *See Dukes*, 564 U.S. at 360. The proposed class encompasses all student-athletes who began to compete "in the 2022-23 season" and "completed four years of eligibility." Not only does this include those who cannot dispute that they used four seasons of competition, but they include those who started that 2022-23 season at the age of 20 or older (above the age of 19 when age-based eligibility would trigger), who would receive even more eligibility than under the new age-based eligibility approach. And others in the class could, for example, try to seek waivers to obtain additional seasons (or may have sought waivers already that are under review by the NCAA). Those proposed class members—who have neither filed suit nor consented to this litigation—are at risk of being *harmed* by the relief requested in this *mandatory* class action. If their waivers are granted, they would be forced to compete for limited roster spots and playing time against those who would otherwise be ineligible (much as the injunctive relief here would injure thousands of student-athletes entering or already in college).

Finally, the decree Plaintiffs propose—reaching "any other Bylaw," "roster limits or other rules," and even the compensation limits of a settlement approved by another federal court—could not satisfy Rule 65(d). *See* ECF No. 19-10 (describing Plaintiffs' requested injunction). And Plaintiffs' announced plan to return later for a Rule 23(b)(3) damages class confirms that this is,

at bottom, a monetary action for which a mandatory, no-notice, no-opt-out class is impermissible.

## BACKGROUND RELEVANT TO CLASS CERTIFICATION

The eligibility framework applicable to Plaintiffs provided four seasons of competition within a five-year period beginning with their enrollment in college, with detailed rules for when the five-year period begins, what activities in each sport use up a season of competition, and the circumstances under which an athlete may be granted additional eligibility. Relevant here, student-athletes may be granted an additional season due to "hardship," defined as an "incapacity resulting from an injury or illness that has occurred under" specific conditions. Bylaws 12.6.4, 12.6.4.1. They may also be granted an additional season of competition when other circumstances outside of their control prevent them from competing. Bylaws 12.6.6, 12.6.6.2, 12.6.1.7.1.

The NCAA Division I ("DI") Cabinet voted unanimously to amend the Five-Year Rule on June 24, 2026, to provide that student-athletes now have five years of eligibility beginning with the earlier of: (a) enrollment in a collegiate institution in a minimum full-time program, or (b) the beginning of the regular academic year immediately after the individual's 19th birthday. But this amendment is not retroactive to revive the eligibility of student-athletes who used their final season of competition (under the previous rules) during the 2025–2026 season—an aspect of implementation that was agreed upon by the DI Cabinet at the time of its unanimous vote. As explained in the accompanying opposition to Plaintiffs' motion for a TRO, the NCAA's membership had good reasons for this decision, focused on not wanting to undermine the settled expectations and reliance interests of thousands of other student-athletes with eligibility remaining.

Plaintiffs' class definition of athletes who "completed four years of eligibility as defined by the NCAA's prior rules by the conclusion of the 2025–2026 season" sweeps in thousands of athletes with vastly different circumstances and theories for additional eligibility. For example,

some members of the proposed class have competed in collegiate athletics *outside* of DI. The NCAA has generally prevailed in lawsuits claiming that competition outside of DI wrongfully triggers a season of competition, but that issue remains live in some courts. *See, e.g.*, *Elad v. NCAA*, 160 F.4th 407, 411 (3d Cir. 2025) (disputing whether years at JUCO should count under the Five-Year Rule). Others started competing at age twenty or older, and would not be entitled to additional eligibility. Other proposed class members might be able to apply for hardship waivers, which would *already* make them eligible to participate in the 2026–2027 season. Rather than share in the same interests, these members of the proposed class risk *harm* from the requested relief because *if* their seasons in other forms of college competition were deemed not to count, or *if* they are eligible for waivers, then granting the relief Plaintiffs seek in this case would force those proposed class members to compete for limited roster spots and playing time against other class members who do not dispute completing four seasons of DI competition and exhausting their eligibility.

These variations are apparent in the twelve named Plaintiffs themselves. While Plaintiffs Wisne and Tyson each competed in four consecutive DI basketball seasons, ECF No. 1 ¶¶ 20, 23, Plaintiff Shaw's "athletic career was hampered due to injury," *id.* ¶ 21, and Plaintiff Jefferies "sustained a season-ending left Achilles injury," which "prevented her from competing for the remainder of the season and cost her a full year of athletic participation," *id.* ¶ 24. Similarly, Plaintiffs Johnson, Loosli, Griffiths, and Morrell competed outside of DI. *Id.* ¶¶ 25, 29–31. The unique and individualized circumstances of each named Plaintiff—which will be magnified at the scale of the potential number of athletes in the proposed class—weigh against the spirit and intention of Rule 23(b)(2). Accordingly, Plaintiffs' motion should be denied.

## LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on

behalf of the individual named parties only." *Dukes*, 564 U.S. at 348 (cleaned up). Class-wide litigation must be able to "resolve" (not just raise) common issues, without altering anyone's burdens under the law and without prejudicing a defendant's right to individualized defenses. *See id.* at 350; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454, 457 (2016). To certify a class under Rule 23(b)(2), Plaintiffs must first prove that the action satisfies all four prerequisites of Rule 23(a). *See Dukes*, 564 U.S. at 350–51; Fed. R. Civ. P. 23(a). They must also show that the NCAA "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). That is, Rule 23(b)(2) certification requires that "a single injunction or declaratory judgment would provide relief to *each member of the class*." *Dukes*, 564 U.S. at 360 (emphasis added). Because Rule 23(b)(2) classes are mandatory—class members receive no notice and have no right to opt out—certification is proper only if the requested relief would "perforce affect the entire class at once." *See id.* at 361–62. Far from a mere pleading standard, Rule 23 requires the Court to conduct a "rigorous analysis." *Id.* at 350–51.

## ARGUMENT

### A. Certification Should Be Denied Because It Rests on No Evidentiary Record

Rule 23(c)(1)(A) directs courts to decide certification "[a]t an early practicable time"—language the 2003 amendments substituted for "as soon as practicable" precisely so that the parties and the court can first develop the information a certification decision requires. *See* Fed. R. Civ. P. 23(c)(1)(A) advisory committee's note to 2003 amendment. Thus, the word "practicable" demonstrates that the certification standard is evidentiary: the movant must "prove," not plead, each Rule 23 element, *Dukes*, 564 U.S. at 350; the court may not presume conformance, *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217–18 (10th Cir. 2013); and it must make findings, *Vallario v. Vandehey*, 554 F.3d 1259, 1265–67 (10th Cir. 2009).

No such record exists. The evidentiary support for the motion consists of a declaration from Plaintiffs' counsel describing counsel's credentials and a retained expert's declaration that, as Plaintiffs describe it, addresses market structure—not class size, membership, the representatives' circumstances, or any other Rule 23 factor. Eight of the twelve proposed representatives have submitted nothing at all, and none of the twelve has submitted anything directed to Rule 23. Plaintiffs concede the record's inadequacy—twice. They represent that they will move under Rule 23(b)(3) only "[a]fter preliminary discovery," ECF No. 20-1 at 1 n.2, and again only "after class certification discovery is conducted," *id.* at 12 n.9. But the facts Rule 23(b)(3) requires—who is in the class, how many they are, what their claims share, and whether the representatives are typical and adequate—are the same facts Rule 23(a) requires now. Plaintiffs cannot simultaneously maintain that class-certification discovery is necessary and ask the Court to certify without it.

**B. The Proposed Class Is Impermissibly Unstable Because Membership Requires Individualized Eligibility Adjudication**

The Court must be able to determine who is within the class it certifies and must be able to frame relief "respecting the class as a whole." Fed. R. Civ. P. 23(b)(2), (c)(1)(B); *Shook v. Bd. of Cty. Comm'rs*, 543 F.3d 597, 603–04 (10th Cir. 2008). Here, deciding whether any given athlete "completed four years of eligibility as defined by the NCAA's prior rules" requires adjudicating, athlete by athlete: (i) whether each collegiate season was in DI, to the extent non-DI seasons are determined not to count; (ii) whether the athlete took a redshirt year, *see* ECF No. 1 ¶ 29 (Loosli "offered a redshirt" at Hawaii); (iii) whether an injury-shortened year qualified for a medical-hardship or season-of-competition exception under the rules applicable to Plaintiffs, *see id.* ¶ 4 n.2, 21, 24 (Shaw; Jefferies); (iv) sport-by-sport counting rules that mean a multi-event athlete such as Jefferies may have different seasons remaining in different sports; (v) the service exceptions and the alternative age-based trigger under the age-based eligibility, *id.* ¶ 44; and (vi) whether the

athlete already holds a waiver restoring a season. None of these questions can be answered from the face of the definition; each requires participation records, transcripts, and eligibility files—for tens of thousands of athletes across every DI sport.

The definition is also unstable. In the Complaint, the class comprises of persons who "began to play in NCAA Division I sports in the 2022–2023 season." *Id.* ¶ 55. In the motion, the class comprises of anyone who "began to play in collegiate sports" that season and at some point "competed in NCAA Division I sports." ECF No. 20-1 at 1. That revision—described as one made "to better clarify," *id.* at 2 n.3—materially broadens the class to sweep in the junior-college and NAIA cohort, including at least three of Plaintiffs' own representatives (Johnson, Griffiths, and Morell) who began at two-year or NAIA institutions and therefore fall outside the pleaded class. *Compare* ECF No. 1 ¶¶ 25, 30–31, 55, *with* ECF No. 20-1 at 1. And because Plaintiffs have stated an intention to also move for class certification under Rule 23(b)(3) at an indeterminate future date, ECF No. 20-1 at 1 n.2, 12 n.9, the proposed exclusion of "any student athlete who has filed an individual or group claim . . . at the time of a motion for class certification in this action," *id.* at 1–2, keys membership to third parties' future litigation choices and to an undefined "motion"—leaving the class in flux just as Plaintiffs ask the Court to certify it.

## C. Plaintiffs Have Not Carried Their Burden Under Rule 23(a)

### 1. Numerosity: Plaintiffs Offer Speculation, Not Evidence, and the Record Shows Individual Litigation is Practicable and Ongoing

Numerosity requires a showing that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff must carry the element "under a strict burden of proof" with evidence from which the court can find impracticability. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). The inquiry also weighs "the nature of the action, the size of the individual claims, and the location of the members," *Colo. Cross-Disability Coal. v. Abercrombie*

*& Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014), together with class members' "ability . . . to institute individual suits," ECF No. 20-1 at 6 (quoting Newberg on Class Actions § 3:12).

Impracticability of joinder cannot be presumed. On Plaintiffs' own account, these are individually substantial claims: each alleges the loss of "significant NIL compensation," scholarship support, and a season of DI competition. ECF No. 1 ¶¶ 20–31. Claims of that kind are already being litigated one athlete at a time, with lawsuits by groups of individuals having already been brought in Ohio, Tennessee, Georgia, and West Virginia (with more to come). The eligibility decisions on which Plaintiffs rely were individual actions, *see id.* ¶ 7 (citing *Pavia v. NCAA*, 760 F. Supp. 3d 527 (M.D. Tenn. 2024); *Martinson v. NCAA*, 804 F. Supp. 3d 1109 (D. Nev. 2025)), and Plaintiffs' own class definition carves out an existing cohort of individual claimants, ECF No. 20-1 at 1–2. Under the very factors Plaintiffs invoke—claim size and demonstrated ability to sue individually—the record shows that individual litigation is practicable and ongoing.[1]

**2. Commonality: Plaintiffs Identify Abstract Questions, Not Common Answers**

To establish commonality, it is not sufficient for Plaintiffs merely to *raise* "common questions—even in droves" or to claim "that they have all suffered a violation of the same provision of law," Plaintiffs must demonstrate that common questions will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. But Plaintiffs fall far short.

Plaintiffs' one concrete contention—that the Rule's transition provision unlawfully denies class members a fifth season—cannot generate common answers without athlete-by-athlete adjudications. The Complaint itself devotes three paragraphs to distinct subgroups—athletes sidelined by Olympic or international training, injuries, coach mistreatment, roster manipulation,

[1] Plaintiffs' assertion of numerosity rests on the total population of DI athletes, despite the Complaint's admission that "the true number can only be determined through discovery." ECF 1 ¶ 57. In fact, Plaintiffs' motion identifies no evidence of the proposed class's size either, failing to meet the strict burden of proof.

compliance errors, service-academy resignations, transfer-portal timing, and program shutdowns. ECF No. 1 ¶¶ 51–53. Members of the proposed class will require individualized eligibility determinations, defeating commonality. For example, this Court would be required to adjudicate, athlete by athlete: (i) whether each collegiate season was in DI, to the extent non-DI seasons are determined not to count; (ii) whether the athlete took a redshirt year, *see* ECF No. 1 ¶ 29; (iii) whether an injury-shortened year qualified for a medical-hardship or season-of-competition exception under the Prior Rules' waiver regime, *see id.* ¶¶ 4 n.2, 21, 24; (iv) sport-by-sport counting rules that mean a multi-event athlete such as Jefferies may have different seasons remaining in different sports; (v) the service exceptions and the alternative age-based trigger in the Rule itself, *id.* ¶ 44; and (vi) whether the athlete already holds a waiver restoring a season.

Although Plaintiffs list broad, abstract questions restating the elements of an antitrust claim, *see id.* ¶ 58, none is a "common contention" that is "capable of *classwide* resolution." *Dukes*, 564 U.S. at 350 (emphasis added). The proposed class includes student-athletes of disparate circumstances, so no common contention can resolve this action *for the entire class*.

### 3. Typicality: The Named Plaintiffs Occupy Materially Different Eligibility Postures and are Not Typical of the Putative Class

Plaintiffs must show that their claims are "typical of the claims of the class they seek to represent." *DG v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010). Typicality exists where "*all* class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances." *Id.* at 1199 (emphasis added).

Plaintiff Wisne (the only Plaintiff eligible to represent the proposed class)[2] (1) has

[2] As explained in the NCAA's opposition to Plaintiffs' motion for a TRO, this Court lacks personal jurisdiction. Only Wisne pleads any connection to Colorado, and he does not tie his claims any of *the NCAA's* conduct in this forum. *See Keanaaina v. NCAA*, No. 26-cv-1283-NYW-KAS, 2026 WL 1213385 at *1 (D. Colo. May 4, 2026); *Aldrich v. NCAA*, 484 F. Supp. 3d 779, 794–96 (N.D. Cal. 2020) (transferring case for lack of connection between alleged injuries and forum state); *Doe 1 v. NCAA*, No. 22-cv-1559-LB,

completed four seasons of competition, (2) has competed exclusively in DI, and (3) conclusively does not qualify for a waiver to retain eligibility under the Five-Year Rule. Thus, his claim is not typical of the proposed class, or even of his fellow plaintiffs. Unlike Plaintiff Wisne, who "was a four-year player" and steadily improved all four years to become an elite competitor, ECF No. 1 ¶ 20, Plaintiff Shaw's "athletic career was hampered due to injury," *id.* ¶ 21, and Plaintiff Jefferies "sustained a season-ending left Achilles injury," which "prevented her from competing for the remainder of the season and cost her a full year of athletic participation," *id.* ¶ 24.

Similarly, four named Plaintiffs competed outside of DI. Plaintiff Johnson "spent three years of his college journey first at a junior college and then at a NAIA school" before transferring to a DI school for the 2025–2026 season. *Id.* ¶ 25. Plaintiff Loosli "transferred to Orange Coast College," which is outside of DI. *Id.* ¶ 29. Plaintiff Griffiths "began his collegiate baseball career at Folsom Lake College" (outside of DI). *Id.* ¶ 30. Plaintiff Morrell "began his collegiate baseball career at American River College," which competes in the Junior College level (not DI). *Id.* ¶ 31.

Moreover, those who started the 2022-23 season at the age of 20 or older would not benefit from the age-based eligibility and are not at risk of being "subjected" to the rule.

The breadth of circumstances represented, not only by the proposed class but by the twelve named Plaintiffs, demonstrates not only that Plaintiffs' claims are not typical of the class but that the proposed class is so diverse that there *is no typical claim*. Different members of the proposed

2023 WL 105096, at *9–12 (N.D. Cal. Jan. 4, 2023). Nor can other Plaintiffs create personal jurisdiction based on Wisne. Personal jurisdiction must exist over the NCAA as to each Plaintiff's claims, and the Court's class certification analysis must focus only on those claims where jurisdiction exists. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264–69; *Murphy v. Aaron's, Inc.*, No. 19-cv-601-CMA-KLM, 2020 WL 2079188, at *15 n.9 (D. Colo. Apr. 30, 2020); *see also Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445–47 (7th Cir. 2020) (*Bristol-Myers* applies to named plaintiffs in class); *Lee v. Branch Banking & Trust Co.*, No. 18-21876-Civ-Scola, 2018 WL 5633995, at *4 (S.D. Fla. Oct. 31, 2018); *Chernus v. Logitech, Inc.*, No. 17-673(FLW), 2018 WL 1981481, at *3–6 (D.N.J. Apr. 27, 2018); *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017); *Spratley v. FCA US LLC*, No. 3:17-CV-0062, 2017 WL 4023348, at *6–8 (N.D.N.Y. Sept. 12, 2017) (no specific jurisdiction over claims of nonresident named plaintiffs who showed no connection between claims and defendant's contacts with forum).

class are not *all* "at risk of being subjected to the same harmful practices." *DG*, 594 F.3d at 1199.

**4. Adequacy: Plaintiffs' Interests Conflict with Others' Within the Class**

Courts in the Tenth Circuit analyze adequacy by asking two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Onyx Props. LLC v. Bd. of Cnty. Comm'rs*, 295 F.R.D. 506, 513 (D. Colo. 2013) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187–88 (10th Cir. 2002)).

First, the two-step certification structure Plaintiffs propose subordinates absent members' interests to the representatives' personal interests. The Complaint demands compensatory, exemplary, treble, and punitive damages for the class, ECF No. 1 at 35, yet the motion reserves all monetary claims for a later Rule 23(b)(3) motion, ECF No. 20-1 at 1 n.2, 12 n.9, while asking the Court to litigate liability now for a mandatory class whose members would be bound by any adverse ruling without ever receiving notice or a chance to exit. *Dukes* rejected the use of Rule 23(b)(2) to adjudicate claims that are, in substance, monetary while bypassing Rule 23(b)(3)'s protections. 564 U.S. at 362–67. Representatives willing to place strangers' damages claims at preclusive risk to accelerate their own injunction are not "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4).

Second, the class definition itself concedes divergence within the group. Some members of the proposed class used four seasons of competition at DI intuitions and have no plausible claim to additional seasons. But, others may. Certification would force these members of the proposed class (like Shaw and Jefferies) into *additional* competition against otherwise ineligible members of the proposed class (like Wisne) just for the *opportunity* to compete in an additional season. [3]

[3] The NCAA is not suggesting that student-athletes who used a portion of their eligibility competing at non-DI institutions are entitled to additional years of DI eligibility. It is only stating that former NAIA or JUCO

Still other members of the proposed class have no plausible claim to eligibility under *either* version of the Five-Year Rule (such as those who would began playing at age 20+ for one reason or another), and yet Plaintiffs' proposed relief would allow them to compete in the 2026–27 season. For example, under the Bylaws applicable to Plaintiffs, men's hockey players and skiers could delay their participation in DI until their 21st birthday without impact to their allotted years of eligibility and seasons of competition. *See* Bylaw 12.6.3.3. Accordingly, the proposed class necessarily encompasses men's hockey players who (1) have exhausted their eligibility under the Five-Year Rule because they began their collegiate careers during the 2022–2023 season and completed four seasons of competition and (2) are ineligible under the new age-based model because they turned 19 before the 2021–2022 season. Plaintiffs' requested relief would nonetheless revive the college careers of these undisputedly ineligible athletes.

In defining their class to include members who have no plausible eligibility under *either* of the NCAA's models, Plaintiffs' requested relief would create a third path to eligibility unmoored from *any* NCAA Bylaw, multiplying the harm to class members with viable claims to eligibility under applicable Bylaws. By asking this Court to allow the proposed class to participate in the 2026–27 season, Plaintiffs necessarily ask the Court for the opportunity to take roster spots from other athletes.[4] "Plaintiffs' legal theory, if successful in this litigation, would benefit some class members at the expense of others." *Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, 343

players might reasonably prefer to pursue individual claims challenging only those portions of the Five-Year rule relevant to them over class relief applicable to a much broader class of athletes.

[4] Plaintiffs' requested injunction would also bar the NCAA from "enforcing roster limits or other rules that would prevent Plaintiffs and Class Members from playing in the 2026-2027 season." ECF No. 1 at 34. But even if Plaintiffs were to prevail on their claims, their complaint does not challenge the legality of the establishing roster limits, making such relief inappropriate. *See id.* ¶¶ 63–80 (laying out claims without reference to rules establishing roster limits). And even if the Court enjoined the NCAA from imposing roster limits in a manner that prevented Class Members from playing, it would do nothing to protect the students-athletes who are not Class Members who would lose their spots to newly eligible class members.

F.R.D. 215, 221 (D. Colo. 2022). This intractable intraclass conflict "goes to the very subject matter of the litigation" and thus prevents Plaintiff Wisne or the rest of the named Plaintiffs from adequately representing the proposed class. *See id.* at 220.

**D. The Requested Relief Is Not Appropriate for the Class as a Whole**

Finally, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360. Plaintiffs' proposed class fails this standard because the requested injunctive relief would not benefit all class members.

Determining any individual's entitlement to Plaintiffs' proposed injunction would require inquiry into whether: that individual competed *outside* of DI, eligibility might be restored through existing rules, and the injunction would provide relief at all—an impossibility for those whose personal circumstances now preclude their continued collegiate athletic careers. These members of the proposed class either stand to gain nothing from this litigation or would be *harmed* by Plaintiffs' requested relief because the requested injunction would force them to compete for limited roster spots and playing time against otherwise ineligible members of the same class.

Members of the proposed class are affected by the Five-Year Rule in distinct ways such that an appropriate injunction would necessarily "differentiate between class members." *Shook*, 543 F.3d at 604. The class is not sufficiently cohesive to permit class certification under Rule 23(b)(2). No "*single* injunction or declaratory judgment would provide relief to *each* member of the class." *Dukes*, 564 U.S. at 360 (emphasis added).

**E. Certification Under Rule 23(b)(2) Is Improper**

Rule 23(b)(2) requires that the defendant's conduct must be "based on grounds generally applicable to all class members," and "final injunctive relief [must] be appropriate for *the class as*

*a whole*." *Shook*, 543 F.3d at 604 (emphasis in original). The latter defeats certification.

First, Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class"; it "does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment." *Dukes*, 564 U.S. at 360. Whether any class member actually obtains what the class seeks—a fifth season in 2026–27—depends on determinations and decisions the requested decree cannot supply. The first is class-member-specific eligibility adjudication. An injunction whose application must be adjudicated member by member is the opposite of the "indivisible" remedy contemplated. *See Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 498–99 (7th Cir. 2012) (quoting *Dukes*, 564 U.S. at 360). As absent members would be bound without notice or opportunity to exit, members holding stronger individual positions would be yoked to a class-wide judgment on a weaker aggregate theory. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).

Second, the contemplated relief must be capable of statement in a single decree meeting Rule 65(d)'s specificity requirements, *Shook*, 543 F.3d at 604–06; and subdivision (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages," Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment; *see also Dukes*, 564 U.S. at 360–67. And the proposed class is a closed, backward-looking set of former competitors seeking one season's worth of individually contingent benefits—a configuration that resembles a damages cohort awaiting quantification, not a cohesive group amenable to uniform structural relief. For the reasons explained herein and in the NCAA's opposition to Plaintiffs' motion for a TRO, Plaintiffs' proposed injunction does not meet this test.

WHEREFORE, the NCAA respectfully requests that the Court DENY Plaintiffs' Motion.

Respectfully submitted this 23rd day of July, 2026.

DORSEY & WHITNEY LLP

*/s/ Andrea Ahn Wechter*
Andrea Ahn Wechter
Ben D. Kappelman
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549
wechter.andrea@dorsey.com
kappelman.ben@dorsey.com

Rakesh N. Kilaru
Wilkinson Stekloff LLP
10th Floor
Washington, DC 20036
Telephone: 202-847-4046
Fax: 202-847-4005
rkilaru@wilkinsonstekloff.com

David J. Zeitlin
Taylor J. Askew (Admission pending payment)
Holland & Knight LLP
Nashville, TN 37201
david.zeitlin@hklaw.com
taylor.askew@hklaw.com

**ATTORNEYS FOR DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2026, I caused the foregoing document, **DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S RESPONSE TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [ECF No. 20],** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Andrea Ahn Wechter*
DORSEY & WHITNEY LLP