IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-03063-CNS-KAS

BROCK WISNE,
AIDAN SHAW,
AISLIN MALCOLM,
CADE TYSON,
ABIGAIL JEFFERIES,
ANTHONY JOHNSON,
LOUIE JORDAN,
JEFFERSON DE LA CRUZ MONEGRO,
ISAIAH JONES,
DIMOND LOOSLI,
BRETT GRIFFITHS, and
JAKE MORELL on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

 NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

     Defendant.

---

**ORDER**

---

Before the Court is Plaintiffs' fully briefed Motion for Rule 23(b)(2) Class Certification. ECF No. 20. The Court GRANTS Plaintiffs' motion. In so doing, the Court presumes familiarity with this case's factual and procedural background, which the Court has recited in its order granting Plaintiffs' motion for injunctive relief.

1

## I.    LEGAL STANDARD

The class action is an exceptional procedural mechanism, permitting a named plaintiff or plaintiffs to represent a class "whose claims they wish to litigate." *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213 (10th Cir. 2014) (citation modified); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) ("A class action . . . enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."). To certify a class action, plaintiffs must first satisfy Federal Rule of Civil Procedure 23(a)'s requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Second, plaintiffs must show through "evidentiary proof" that at least one of three conditions defined in Federal Rule of Civil Procedure 23(b) is satisfied. *Colorado Cross Disability*, 765 F.3d at 1213 (citation modified); *see also Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1228 (10th Cir. 2013).

"In determining the propriety of a class action, the question is not whether plaintiffs or petitioners have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (citation modified). Plaintiffs must satisfy the "preponderance" evidentiary standard at the class certification stage. *See, e.g., White v. Gen. Motors LLC*, No. 1:21–cv–00410–CNS–MEH, 2023 WL 3278460, at *3 (D. Colo. May 5, 2023) (discussing courts' application of various evidentiary standards at the certification stage and adopting the preponderance standard); *Payne v. Tri-State CareFlight, LLC*, 328 F.R.D. 601, 621 n.12 (D.N.M. 2018) ("[A]lthough the Tenth Circuit has not yet explicitly adopted the

2

preponderance standard for fact-finding in class certification analyses, it most likely will, and the Court will employ that standard here." (collecting cases)); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir.) (en banc), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424, 214 (2022) ("Because the application of Rule 23 to certify a class does not alter the defendants' rights or interests in a substantive way, there is no basis for applying a heightened standard of proof beyond the traditional preponderance standard.").

## II.     DISCUSSION

The parties dispute whether Plaintiffs have met their class certification burdens. The Court analyzes Plaintiffs' Rule 23(a) and Rule 23(b) burdens in turn, concluding they have satisfied each by a preponderance of the evidence. At the outset, the Court notes that Plaintiffs seek certification only under Rule 23(b)(2). *See* ECF No. 20-1 at 6.

### A.  Rule 23(a)

#### i.      Numerosity

Plaintiffs contend that they have satisfied their numerosity burden because there are "likely thousands of athletes who will be affected by the Five-Year Eligibility Rule," ECF No. 20-1 at 12, and that joinder of these athletes, all of whom would fall within the class, is impracticable, *see* Fed. R. Civ. P. 23(a)(1). The NCAA challenges *numerosity* on the grounds that there are already claims of the sort Plaintiffs press here being litigated across the country in individual actions. *See* ECF No. 33 at 9. That may be true. But this fails to persuade that Plaintiffs have failed to meet their *numerosity* burden.

3

Under Rule 23(a)(1), plaintiffs must show "that the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23(a)'s numerosity inquiry is not a blunt "question of numbers." *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977). Assessing a class's numerosity is a "fact-specific inquiry," calling for the consideration of certain factors, including: "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." *Colorado Cross Disability*, 765 F.3d at 1215 (citation modified).

This case is about Plaintiffs and putative class members' exclusion from playing another season of Division I athletics due to the NCAA's June 24, 2026 eligibility rule (the Rule), which Plaintiffs contend violates federal antitrust law. *See, e.g.,* ECF No. 20-1 at 6. The Court agrees with Plaintiffs that there are likely thousands of athletes affected by the Rule in a manner that would qualify them for class membership.[1]

Plaintiffs have certainly identified evidence in the form of publicly available NCAA data from which the Court can determine, by a preponderance of the evidence, that there are student-athletes beyond named Plaintiffs who would fall within the class. *See, e.g., Colorado Cross Disability*, 765 F.3d at 1215 (10th Cir. 2014) ("Plaintiffs must offer *some* evidence of established, ascertainable numbers constituting the class." (citation modified) (emphasis added)). And this data indicates that it is more likely than not that there would

---

[1] Plaintiffs' proposed class is defined as: "All persons in the United States who began to play in collegiate sports in the 2022–2023 season, competed in NCAA Division I sports, and completed four years of eligibility as defined by the NCAA's prior rules by the conclusion of the 2025–2026 season, and are therefore barred from playing a fifth season due to the NCAA's adoption and immediate implementation of the Five-Year Eligibility Rule." ECF No. 20-1 at 6.

be, at a minimum, forty class members, which the Tenth Circuit have acknowledged is presumably sufficient to sustain a class action. *See, e.g., Cline v. Sunoco, Inc. (R&M)*, 159 F.4th 1171, 1185 n.3 (10th Cir. 2025) ("Usually, a total of 40 or more class members raises a presumption of impracticability of joinder based on numbers alone." (citation modified)). *See also Pinkston v. Wheatland Enters., Inc*., No. 11–cv–2498–JAR, 2013 WL 1302053, at *3 (D. Kan. Mar. 27, 2013) ("A court may use common sense in making assumptions to support a finding of numerosity." (citation modified)); *Miller v. Basic Rsch*., *LLC*, 285 F.R.D. 647, 653 (D. Utah 2010). Especially where Division I student-athletes are located across the country, and the Rule has a nationwide reach. *See also Siqueiros v. Gen. Motors LLC*, No. 16–cv–07244–EMC, 2021 WL 2115400, at *18 (N.D. Cal. May 25, 2021), *on reconsideration in part*, No. 16–cv–07244–EMC, 2021 WL 3291837 (N.D. Cal. Aug. 2, 2021) (finding numerosity requirement satisfied where plaintiffs "contend[ed] that GM sold thousands of Class Vehicles with the LC9 engine in each of the relevant states . . . . [e]ven if th[o]se numbers [were] an overestimation" because "at least one hundred of the thousands" of purchasers "[would] likely meet the class definition"); *Serfaty v. Int'l Automated Sys., Inc*., 180 F.R.D. 418, 420 (D. Utah 1998); *Castillo v. Gen. Motors Corp*., No. CIV. 07–2142 (WBS) (GGH), 2008 WL 8585691, at *3 (E.D. Cal. Sept. 8, 2008). Moreover, the Court agrees with Plaintiffs that the usage of NCAA records and data provide objective criteria from which class members may be identified. *See* ECF No. 36 at 7.

Accordingly, given the nature of this antitrust action, the Rule upon which it is premised, and the number of Division I student-athletes across the country that the Rule

stands to affect, Plaintiffs have met their *numerosity* burden. And to the extent that Plaintiffs' class must be *ascertainable*, *see White*, 2023 WL 3278460, at *7, it is. As noted above, there are objective criteria that make the class "capable of being determined" —if the student-athlete came to college in 2022, for example, and whether student-athlete has completed four seasons of collegiate sports—and a class action is "administratively feasible," given Plaintiffs' class definition is sufficiently finite for the Court to "determine whether a particular individual is a member of the proposed class," *id*. (quotations omitted).[2]

### ii. Commonality

Plaintiffs contend that they have met their *commonality* burden because their claims and the claims of potential class members concern common questions of law and fact, *see* ECF No. 20-1 at 12, including whether the Rule and class members' exclusion from another season of "collegiate athletic competition," *id.* at 13, provides a unitary basis for their antitrust claims. The NCAA argues that Plaintiffs have failed to identify common questions that will "drive the resolution of the litigation." ECF No. 33 at 9 (citation modified). Further, the NCAA argues that Plaintiffs' "concrete contention" regarding the Rule's denial of their and other class members' eligibility for a fifth season of athletic competition demands "athlete-by-athlete adjudications," defeating *commonality*. *Id. See also id.* at 10 (arguing the Court will need to conduct "individualized eligibility"

---

[2] Contrary to the NCAA's suggestion, it does not defeat *numerosity* that other, individual student-athletes may be litigating similar cases. Litigating claims on an individual basis in *other cases* does not bear on whether Plaintiffs have shown that there is a sufficiently numerous pool of potential class members in *this case*. *Cf.* ECF No. 36 at 8.

determinations for potential class members that defeat *commonality*). The Court agrees with Plaintiffs that they have met their *commonality* burden.

Rule 23(a)(2) is disjunctive: a plaintiff may satisfy its commonality requirement if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); s*ee also Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982) ("In determining whether the . . . commonality requirement[ ] ha[s] been fulfilled, either common questions of law or fact presented by the class will be deemed sufficient."). To assess whether plaintiffs have satisfied Rule 23(a)(2)'s commonality requirement, courts ask whether the class claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (quotations omitted). "A finding of commonality requires only a single question of law or fact common to the entire class." *Menocal v. GEO Grp., Inc*., 882 F.3d 905, 914 (10th Cir. 2018) (citation modified); *see also Wal-Mart*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (citation modified)). "A common contention need not be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv*., 800 F.3d 1047, 1053 (9th Cir. 2015) (citation modified).

Plaintiffs have identified one common issue of law that will "resolve an issue that is central" to Plaintiffs' claims "in one stroke," *Wal-Mart*, 564 U.S. at 350: Whether the

7

Rule's limitation on their eligibility to play a fifth season is anticompetitive as an antitrust matter. *See* ECF No. 20-1 at 13. *See also id.* at 14 (observing that answering this question will "drive the resolution of the litigation" (citing *Wal-Mart*, 564 U.S. at 350)). In other words, Plaintiffs have met their *commonality* burden because there is a question of law—*does the Rule and the NCAA's eligibility requirement violate antitrust laws?*—that applies class wide. *See, e.g., D.B.U. v. Trump*, 349 F.R.D. 228, 237 (D. Colo. 2025) (finding that petitioners met *commonality* burden because "whether [their] present or future detainment" under a single policy was constitutional presented a "question of law" that was "common to the class" (citing Fed. R. Civ. P. 23(a)(2)). At bottom, determining the "truth or falsity" of whether the NCAA's Rule is anticompetitive will resolve an issue central to Plaintiffs' antitrust claims "in one stroke." *White*, 2023 WL 3278460, at *9 (citation modified). *See also* ECF No. 36 at 9 ("Rather, the Class claim relates to whether the NCAA's categorical decision to deny the benefits of its new Five-Year Eligibility Rule to athletes who completed four years of eligibility this year violates antitrust law.").

Recall the NCAA argues that there are individualized considerations for class members that defeat *commonality.* ECF No. 33 at 10. But even if some class members have different factual circumstances that attend their claims does not change the common question that drives those claims—i.e., whether the Rule and its implementation is anticompetitive and violative of federal antitrust law. *See D.B.U.,* 349 F.R.D. at 238 (""[A] class can be certified even if there are some individual issues that can be efficiently and fairly adjudicated individually. Especially where . . . questions of law about the [policy] are

8

common to the class." (citation modified)); ECF No. 36 at 10. Accordingly, Plaintiffs have met their *commonality* burden, and the NCAA fails to persuade otherwise.

### iii.     Typicality

Plaintiffs argue that their claims are typical of putative class members because they all face the same harm, *see* ECF No. 20-1 at 16, based on the same Rule, which is "unlawful as to the entire Class because it violates Section 1 of the Sherman Act," *id.* at 17. The NCAA argues that Plaintiffs are not typical representations for potential class members because factual distinctions exist between them. For example, that unlike Plaintiff Wisne, Plaintiff Shaw suffered an injury during his athletic career, *see* ECF No. 33 at 11, and four other named Plaintiffs competed outside of Division 1, *id.* The NCAA takes this further, arguing not only that "Plaintiffs' claims are not typical of the class but that the proposed class is so diverse that there is *no typical claim.*" *Id.* (original emphasis). The Court disagrees, and finds that Plaintiffs have met their *typicality* burden.

Under Rule 23(a)(3), "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Rule 23(a)'s typicality requirement "do[es] not require that every member of the class share a fact situation identical to that of the named plaintiff." *Colorado Cross Disability*, 765 F.3d at 1216 (citation modified). "[D]iffering fact situations of class members do not defeat typicality . . . so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (citation modified).

9

*Colorado Cross Disability* and *Menocal* doom the NCAA's *typicality* argument. The "differing fact situations" of various Plaintiffs that the NCAA identifies, *id.*, are immaterial for *typicality* purposes. It does not matter that Plaintiff Shaw or Plaintiff Jefferies were at one point injured, whereas Plaintiff Wisne was not. What matters for *typicality* purposes is that Plaintiffs' claims and the claims of class members are "based on the same legal or remedial theory." *Id.* And that is true here: The claims of Plaintiffs and putative class members are based on the theory that the NCAA has engaged in anticompetitive conduct that has harmed Plaintiffs and class members by limiting their eligibility to compete in a fifth season of collegiate athletics. *See also* ECF No. 36 at 11.

In sum, the claims of Plaintiffs and putative class members stem fundamentally from the Rule and its purported, anticompetitive effects. *See DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1199 (10th Cir. 2010) ("And, like commonality, typicality exists where, as here, all class members are at risk of being subjected to *the same harmful practices*, regardless of any class member's *individual circumstances*." (citation modified)). That some Plaintiffs and class members may—and will inevitably—have factual differences, such as medical hardships, among themselves does not disturb this unifying feature of their claims. *See, e.g., D.B.U.*, 349 F.R.D. at 238–39 (collecting cases). Thus, Plaintiffs have met their *typicality* burden.

### iv.    Adequacy

Plaintiffs argue that they have met their *adequacy* burden because they, and class counsel, have no conflicts with putative class members, as well as that they and class counsel will vigorously prosecute this case on behalf of the class. *See, e.g.,* ECF No. 20-

1 at 16. *See id.* at 17 ("Here, there are no differences that create conflicts between the named Plaintiffs' interests and the Class Members' interests."). The NCAA counters that Plaintiffs cannot meet their *adequacy* burden because Plaintiffs' interest conflict with the interests of class members, *see* ECF No. 33 at 12, since Plaintiffs apparently "subordinate" class members' interests to their own, and because there is "divergence" within the class definition, *id.* The Court agrees with Plaintiffs that they have met their *adequacy* burden.

Rule 23(a)(4) requires that a named plaintiff "will fairly and adequately protect the interests of the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hill v. Aspen Contracting, Inc.*, No. 1:20–cv–00149–SWS–MLC, 2021 WL 2662296, at *5 (D.N.M. Feb. 22, 2021) (citation modified); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ("The adequacy heading also factors in competency and conflicts of class counsel." (citations omitted)).

From an *adequacy* perspective, neither Plaintiffs nor class counsel have conflicts with any putative class members. Plaintiffs assert the same claims as class members, and those claims are premised on the same legal theory. They do not seek unique relief relative to class members. This makes Plaintiffs adequate class representatives under Rule 23(a)(4). *See, e.g., D.B.U.*, 349 F.R.D. at 239 ("As Petitioners explain, they do not seek any unique relief contrary to the relief they seek on behalf of the class. And for this reason, their interest in this litigation is aligned with class members' interests." (citation

modified)); Adequacy of class representative—Conflicts of interest, 1 Newberg and Rubenstein on Class Actions § 3:58 (6th ed.) ("Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a proposed class representative from meeting the Rule 23(a)(4) adequacy requirement." (footnote omitted)); *Kalantari v. Chenega Glob. Prot., LLC*, No. 1:25–cv–00961–CNS–NRN, 2026 WL 863976, at *3 (D. Colo. Mar. 30, 2026) ("Plaintiffs assert the same theories of liability arising from Defendant's conduct as all other class members. This demonstrates that no conflicts exist such that Plaintiffs' representation would be inadequate under Rule 23(a)(4)." (citation modified)).

As for class counsel, Plaintiffs have put forth evidence demonstrating counsel's experience and competency. *See generally* ECF No. 20-2. Class counsel has litigated numerous antitrust class actions, *see id.*, and counsel in this case have already demonstrated their commitment by seeking injunctive relief and certification on the class's behalf. This evidence, coupled with this case's procedural history, demonstrates the adequacy of class counsel as a Rule 23(a)(4) matter. *See, e.g., D.B.U.*, 349 F.R.D. at 239–40 ("Counsel for Petitioners and the class have litigated numerous class actions, and are amply qualified to serve as class counsel in this case. Further, class counsel has litigated this action through the TRO phase, and now into certification and preliminary injunction briefing. For these reasons, class counsel have vigorously prosecuted this action on behalf of the class—and will continue to—thus satisfying Rule 23(a)(4)'s adequacy requirement."); *McCormick v. HRM Res., LLC*, No. 1:24–cv–00823–CNS–

CYC, 2025 WL 2958834, at *5 (D. Colo. Oct. 17, 2025) ("Here, counsel collectively have adequate class experience.").[3]

As noted above, the NCAA's *adequacy* arguments can be summarized as challenging Plaintiffs' adequacy as class representatives based on factual distinctions with potential class members, as well as possible factual distinctions among class members. *See, e.g.,* ECF No. 33 at 12. But such distinctions do not render Plaintiffs inadequate class representatives. *See, e.g., White*, 2023 WL 3278460, at *12; *Kalantari*, 2026 WL 863976, at *3. Nor has the NCAA persuaded that there are conflicts between class members based on the proposed class definition. *See* ECF No. 33 at 13. Plaintiffs' proposed class definition does not create an intractable intraclass conflict where the relief to which any class member is entitled would come at the expense of another class member or calculated using differing methodologies. *Cf. Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC*, 343 F.R.D. 215, 223 (D. Colo. 2022) (finding intraclass conflict existed where plaintiffs sought "to represent a class of differently situated landowners who stand to receive the largest overall payments based on different payment methodologies"). Nor does the class definition create "differently situated," *id.*, class members. Instead, it defines class members based on when they began competing in Division I sports, completed their four years of eligibility, and then became barred from completing in a fifth season based on the NCAA's Rule. *See* ECF No. 20-1 at 6. *See also Daye*, 313 F.R.D. at 164 ("[O]nly a conflict that goes to the very subject matter of the

---

[3] The Court's conclusion is the same if the adequacy of class counsel is considered under Rule 23(g). *See* Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) (setting forth factors to consider in appointing class counsel); *Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 164 (D.N.M. 2016).

13

litigation will defeat a party's claim of representative status. [N]ot every potential disagreement between a class representative and the putative class members will stand in the way of a class suit." (citation modified)).

* * *

The Court has considered Rule 23(a)'s four requirements. Plaintiffs have met their burdens under each by a preponderance of the evidence. Accordingly, the Court proceeds to analyze Plaintiffs' certification request under Rule 23(b)(2).

### B.  Rule 23(b)(2)

The parties dispute whether Plaintiffs have met their certification burdens under Rule 23(b)(2). *Compare* ECF No. 20-1 at 17, *with* ECF No. 33 at 14. Explained below, Plaintiffs have.

Rule 23(b)(2) provides maintenance of a class action where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). *See also Wal-Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."); *D.B.U.*, 349 F.R.D. at 240 (collecting cases explaining background and purpose of Rule 23(b)(2) class actions, and noting Rule 23(b)(2) "contains no requirement of predominance" (citation modified)).

Rule 23(b)(2) imposes two requirements. *First*, that "the defendants' actions or inactions must be based on grounds generally applicable to all class members." *Shook v. Bd. of Cnty. Commissioners of Cnty. of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008). And

14

*second*, "that final injunctive relief be appropriate for the class as a whole." *Id*. (emphasis omitted); *see also Martinez v. Reams*, No. 20–cv–00977–PAB–SKC, 2021 WL 603054, at *2 (D. Colo. Feb. 16, 2021).

Regarding the first, *general applicability* requirement, Plaintiffs have shown that the NCAA's action is based on grounds "generally applicable to all class members," *Shook*, 543 F.3d at 604, who face ineligibility to play a fifth season because the NCAA is "subjecting them all to the same [Rule]," ECF No. 20-1 at 18. For substantially the same reason that Plaintiffs have shown *commonality* and *typicality*, this is sufficient to show that the NCAA's action is generally applicable. *See, e.g., D.G.*, 594 F.3d at 1201 ("[C]ertification is appropriate even if the defendant's action or inaction has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class. That a class possibly or even likely includes persons unharmed by a defendant's conduct should not preclude certification." (citation modified)); *D.B.U.*, 349 F.R.D. at 241 ("At bottom, Petitioners challenge the application of . . . a common policy, to which Petitioners and class members are or may be subject. This is sufficient to meet their burden under Rule 23(b)(2)'s first requirement." (citation modified)).

Regarding the second, *class wide relief* requirement, Plaintiffs have shown that the class is sufficiently cohesive, given that class wide injunctive relief would satisfy Rule 65(d) and class members' injuries are "sufficiently similar" to be remedied by a single injunction. *See* ECF No. 20-1 at 18. *D.B.U.*, 349 F.R.D. at 241 (explaining class is sufficiently "cohesive" where any injunction may "state its term specifically" under Rule

65(d)). Moreover, Plaintiffs' class would be manageable, given that, as Plaintiffs observe, class members' injuries are sufficiently similar such that they can be addressed in "a single injunction [without the need to] differentiate between class members." *Id.* (citation modified). While the NCAA argues that injunctive relief would "not benefit all class members" due to potential factual distinctions among class members, ECF No. 33 at 14, the existence of factual difference among Plaintiffs, or among Plaintiffs and class members, do not preclude Plaintiffs from satisfying this Rule 23(b)(2) requirement. *See D.B.U.*, 349 F.R.D. at 241; *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) ("That the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy." (citation modified)).[4]

\* \* \*

Certification of Plaintiffs' proposed class is appropriate. Plaintiffs have satisfied Rule 23(a) and Rule 23(b)(2)'s requirements by a preponderance of the evidence. The Court is mindful, of course, that certifying Plaintiffs' proposed class is not dispositive of their claims, or any class member's claim. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen*, 417

---

[4] The NCAA also appears to mount what is essentially an argument about Rule 23(b)(3) certification. *See* ECF No. 33 at 15. Such arguments do not bear on Rule 23(b)(2) certification. Regardless, any argument that Plaintiffs have not put forward a "cohesive group amenable to uniform structural relief," ECF No. 33 at 15, under Rule 23(b)(2) is unpersuasive. But by identifying and defining a Rule 23(b)(2) class of student-athletes who face ineligibility for a fifth season due to the Rule and the NCAA's conduct, and on whose behalf Plaintiffs seek injunctive relief, Plaintiffs have done exactly that. And to the extent that the NCAA appears to argue there is something improper about certifying a Rule 23(b)(2) class prior to certifying a Rule 23(b)(3) class, Plaintiffs explain why this is mistaken. *See* ECF No. 36 at 12.

16

U.S. at 178. After conducting its "rigorous analysis" of the class certification requirements,

the Court answers this question affirmatively. *See Wal-Mart*, 564 U.S. at 351.

### III.    CONCLUSION

Consistent with the above analysis, Plaintiffs' Motion for Rule 23(b)(2) Class

Certification, ECF No. 20, is GRANTED. Plaintiffs' class as proposed in the motion is

certified, specifically

> All persons in the United States who began to play in collegiate sports in
> the 2022–2023 season, competed in NCAA Division I sports, and completed
> four years of eligibility as defined by the NCAA's prior rules by the
> conclusion of the 2025–2026 season, and are therefore barred from playing
> a fifth season due to the NCAA's adoption and immediate implementation
> of the Five-Year Eligibility Rule.

Plaintiffs are named as class representatives. Pursuant to Federal Rule of Civil Procedure

23(g), Robert K. Shelquist of Cuneo Gilbert Flannery & LaDuca, LLP, is appointed lead

counsel for the certified class, and all Cuneo Gilbert Flannery & LaDuca, LLP attorneys

who have appeared in this matter as counsel of record for Plaintiffs are appointed as co-

counsel for the certified class.

DATED this 31st day of July 2026.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge

17