# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-03063-CNS-KAS

Brock Wisne,
Aidan Shaw,
Aislin Malcolm,
Cade Tyson,
Abigail Jefferies,
Anthony Johnson,
Louie Jordan,
Jefferson De La Cruz Monegro,
Isaiah Jones,
Dimond Loosli,
Brett Griffiths, and
Jake Morell on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

National Collegiate Athletic Association,

      Defendant.

---

## DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S EMERGENCY MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION

---

### INTRODUCTION[1]

While the Court entered its decision granting a preliminary injunction to Plaintiffs, *see* ECF 38 ("Op."), it did not set forth the terms of the injunction or conduct restrained as required by Federal Rule of Civil Procedure 65.  The NCAA respectfully requests that the Court enter the order required by Rule 65 to provide clarity about what the NCAA is enjoined from doing; until it does so, Tenth Circuit case law provides that there is no valid injunction in effect.

In so doing, the Court should clarify, among other things, that it is not enjoining any provisions of the settlement in *In re College Athlete NIL Litigation*, Case No. 4:20–cv–03919–CW (N.D. Cal.) ("*House*"), as initially requested by Plaintiffs, *see* ECF No. 19-1 at 21 ¶ 4.  The Court's opinion did not "state the reasons why" any such injunction should issue; Fed. R. Civ. P. 65(a); on the contrary, its opinion appears to envision that the roster limits and Benefits Pool cap established by the *House* Settlement will remain in place. *See* Op. 34–36.

---

[1] Pursuant to D.C.COLO.LCivR 7.1(a), counsel for the NCAA conferred with counsel for Plaintiffs on: (1) the request that an order contemplated by Rule 65(d) be entered; (2) for clarification on the injunction with respect to the *House* settlement, the transfer rules, and the application of the age-based eligibility rule; and (3) expedited briefing on the motion for clarification. In response, Plaintiffs' counsel initially opposed the expedited briefing. As to the other relief requested, Plaintiffs' counsel requested that a proposed order be provided and that any conferral take place on Monday, August 3rd. In response, counsel for the NCAA stated that a proposed order could not be submitted as the motion itself was seeking clarity about what the Court ordered. NCAA counsel further inquired as to whether it was Plaintiffs' position that the Court enjoined the NCAA with respect to every single item listed in Plaintiffs' motion (p. 21). In response, Plaintiffs' counsel noted that they believe "the Order speaks for itself in granting the Plaintiffs their requested relief," and that they would "oppose any attempts by the NCAA to pick it apart."

There is absolutely no lawful basis for an order suggesting otherwise. Plaintiffs have released any ability to seek such relief and are in any event precluded from pursuing such relief in this forum. Moreover, basic principles of comity and respect preclude one federal district court from altering or enjoining a judgment entered by a coordinate federal court. The *House* settlement, a class-action settlement approved after a final fairness hearing, indisputably is such a judgment.

This motion is brought on an emergency basis because the Court's order dramatically reshapes the pool of eligible players in the 2026-27 Academic Year. Schools, potential and current student-athletes, and individuals who already graduated are trying to determine what to do in response, in real time, without clarity about what the Court's order actually means, requires, and/or precludes or what opportunities may or may not be available to them. The decision on the preliminary injunction was provided by July 31, 2026, apparently based on Plaintiffs' argument that the new age-based eligibility rule was being implemented on August 1, 2026, a Saturday. Now, the NCAA, schools, and student-athletes are left without clarity, over the weekend, as to the parameters of the granted injunction. Every day of uncertainty compounds the problem. Accordingly, the NCAA requests that the Court order expedited briefing (to the extent it requires briefing) with Plaintiffs to respond by 5:00pm on Monday, August 3, 2026, and that any reply be filed by 10:00am on Tuesday, August 4, 2026. The NCAA also requests that the Court render a decision by Wednesday, August 5, 2026 as clarity is urgently required.

## **LEGAL STANDARD**

"A district court has discretion to revise interlocutory orders prior to entry of final judgment." *Trujillo v. Bd. of Ed. of the Albuquerque Pub. Schs.*, 212 F. App'x 760, 765 (10th Cir. 2007). "The Court may be guided by Rules 59 and 60 standards in deciding whether to alter or vacate an interlocutory order." *Mantooth v. Bavaria Inn Rest., Inc.*, 360 F. Supp. 3d 1164, 1169 (D. Colo. 2019). "[A] court can alter its interlocutory orders even where the more stringent requirements applicable to a motion to alter or amend a final judgment under Rule 59(e) or a motion for relief from judgment brought pursuant to Rule 60(b) are not satisfied." *Id.*

"The purpose of a Rule 59(e) motion is to correct manifest errors of law or to present newly discovered evidence." *Monge v. RG Petro-Mach. (Grp.) Co. Ltd.*, 701 F.3d 598, 511 (10th Cir. 2012). These grounds include "the need to correct clear error or prevent manifest injustice." *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quotations omitted). Under Rule 60(b), the court may relieve a party from a final order due to mistake, if the order is void, or for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (4), (6). Relief is warranted where the court "has made a substantive mistake of law[.]" *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999).

Those standards are met here, at least to the extent required for the Court to clarify its interlocutory opinion and enter the order required by Rule 65(d) specifying the conduct restrained. As explained below, it would be clear error, or a substantive mistake of law,

to (1) not specify the terms of the injunction the Court entered, or (2) attempt to enjoin provisions of a court-approved settlement that is indisputably binding on Plaintiffs.

## ARGUMENT

**A.    The Court Should State the Terms of the Injunction Specifically and Describe in Reasonable Detail the Act or Acts Restrained or Required.**

The Court's recent Order purports to "issue[] a preliminary injunction." Op. at 2 n.1. The Order, however, simply states that the Court "GRANTS Plaintiffs' Motion," *id.* at 50, without any further specification.

Rule 65(d) requires more. It states that, "[e]very order granting an injunction . . . must . . . state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B)–(C). "An injunction cannot be so general as to leave the party open to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and thus make him vulnerable to prosecution for contempt." *Retiree, Inc. v. Anspach*, 660 F. App'x 582, 590 (10th Cir. 2016) (modifications and internal quotation omitted). The rule requires "that the enjoined conduct be described in reasonable, not excessive, detail." *Id.* (internal quotation omitted). Doing so is necessary "'(1) to prevent confusion on the part of those faced with injunctive orders and (2) to aid the appellate court in defining the bounds of injunctive relief.'" *Famer v. Banco Popular of N. Am.*, 557 F. App'x 762, 767 (10th Cir. 2014) (quoting *Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 371 (10th Cir. 1996)); *see also M.G. v. Armijo*, 117 F.4th 1230, 1249 (10th Cir. 2024) ("To satisfy Rule 65(d), the language of a preliminary injunction must be specific enough for the court to determine whether the defendant is complying.").

5

The Court's Order does not satisfy these standards.  It does not articulate "in reasonable" detail what conduct is restrained or what actions are required, *Retiree*, 660 F. App'x at 590, which is particularly problematic because the relief sought by Plaintiffs was exceedingly broad.  *See generally* ECF No. 19-1 at 21 (listing items (1)-(5)).  To the extent the Order purports to incorporate the relief requested in Plaintiffs' motion by reference, *see id.*, that is precluded by Rule 65(d)(1)(C).  The NCAA is currently left to guess whether—and to what extent—it is enjoined.

Specifically, it is unclear whether:

- the injunction purports to preclude the NCAA from implementing and enforcing provisions of the *House* Settlement that are binding on Plaintiffs and part of a judgment entered by a sister federal court, *see id.* at 21 ¶ 4;

- the injunction purports to preclude the NCAA from enforcing rules regulating transfers between institutions, *see id.* at 21 ¶ 3; and

- the Court meant to allow "*all* persons in the United States who began to play in collegiate sports in the 2022–2023 season" and "completed four years of eligibility as defined by the NCAA's prior rules by the conclusion of the 2025–2026 season" to have a fifth season, ECF No. 37 at 17 (emphasis added)—or just those within that group who would qualify for a fifth season under the new Age-Based Eligibility Rule.

This uncertainty is precisely the harm Rule 65(d) is designed to prevent: it "subject[s] the [enjoined party] to the hazard of conducting business in the mistaken belief that it is not prohibited by the injunction and thus make[s] [them] vulnerable to prosecution

6

for contempt." *Retiree, Inc.*, 660 F. App'x at 590. Until such clarification is provided, there is no valid injunction in effect. *See Reliance Ins. Co. v. Mast. Constr. Co.*, 84 F.3d 372, 376 (10th Cir. 1996) (finding restraining order "invalid" because it "failed to meet the requirements of Rule 65(d)").

**B.    The Court Should Clarify that it Is Not Enjoining Provisions of the *House* Settlement, Because Doing So Would Be Clearly Erroneous or a Substantive Mistake.**

Clarification from the Court regarding the scope of its injunction is particularly necessary because some of the relief sought by the Plaintiffs is plainly outside this Court's authority. Specifically, one of the forms of relief the Plaintiffs sought was as follows:

> (4) Enjoining the Defendant from enforcing roster limits or other rules that would prevent Plaintiffs and Class Members from playing in the 2026–2027 season, or enforcing against Plaintiffs and Class Members a cap on compensation limits otherwise laid out in the settlement stemming from the *House v. NCAA* and similar litigation[.] ECF 19-1 at 21 ¶ 4.

If the Court meant to enjoin these provisions of the *House* Settlement, it did not "state the reasons why it issued." Fed. R. Civ. P. 65(d)(1)(A). There is no analysis—antitrust or otherwise—of the *House* settlement's roster caps or compensation limits, which means there is no basis for issuing an injunction against them. *See OCI Wyoming, L.P. v. PacifiCorp*, 479 F.3d 1199, 1204 (10th Cir. 2007) ("[W]e have traditionally required . . . a recitation of all of the subsidiary facts necessary to permit us to see the steps taken by the district court in reaching its ultimate conclusion." (citing Fed. R. Civ. P. 52, which extends to interlocutory injunctions)).

If anything, the Court's Order appears to envision those provisions of the *House* settlement remaining in place: In dismissing the NCAA's arguments regarding

7

anticompetitive effects, the Court took note of putative evidence in the record suggesting that "many teams have not met their roster caps," Op. 35, and that the compensation available to plaintiffs would consist of "third-party NIL money," which "is not capped," *id.* In other words, the Court appeared to conclude that the relief it granted would *not* disturb the *House* Settlement because putative class members could obtain already-open roster spots and compensation outside the Benefits Pool cap set forth in the Settlement. If that is what the Court meant to hold, then it can be clarified in the order required under Rule 65(d).

Such clarification is necessary because ruling otherwise would be contrary to law. As an initial matter, Plaintiffs are clearly bound by the roster and compensation limits in the *House* Settlement. As the Court acknowledged, the "Released Injunctive Class Claims" under the *House* Settlement include any claims concerning "NCAA roster and scholarship limits as agreed to in the Injunctive Relief Settlement." *Id.* at 15 (quoting ECF No. 958-1 at ¶ 1(qq), Fourth Amended Stipulation and Settlement Agreement, *House*, No. 4:20-cv-03919-CW (N.D. Cal. May 7, 2025) ("*House* Settlement")). Similarly, the "Released Injunctive Class Claims" also include any claims regarding "monies and benefits that may be provided to student-athletes by the NCAA, Division I conferences, and/or Division I Member Institutions under NCAA or conference rules." *Id*. (quoting *House* Settlement ¶ 1(qq)). The Benefits Pool cap, limiting benefits that NCAA Division I Member Institutions can directly provide to student-athletes, is just such a rule—indeed, it is the central rule established by the *House* Settlement.

Plaintiffs cannot challenge the roster limits or Benefits Pool cap through a proceeding in this Court. Plaintiffs are members of the *House* Injunctive Relief Class: They are "student-athletes who compete on, competed on, or will compete on a Division I athletic team at any time between June 14, 2020 through the end of the Injunctive Relief Settlement Term." *Id.* (quoting *House* Settlement ¶ 1(aa)); *see House* Settlement ¶ 19 (effectuating release). Class members cannot collaterally attack a settlement by which they are bound. *Floyd v. Ortiz*, 300 F.3d 1223, 1225 n.1 (10th Cir. 2002) (A "judgment entered with prejudice under terms of settlement 'whether by stipulated dismissal, a consent judgment, or a confession of judgment' [is] not subject to collateral attack by party or person in privity." (quoting *Langton v. Hogan*, 71 F.3d 930, 935 (1st Cir. 1995))); *see also Gte Sylvania v. Consumers Union of United States*, 445 U.S. 375, 386 (1980) ("[P]ersons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order."); *Farmer v. Banco Popular of North America*, 557 F. App'x at 762, 766–67 (10th Cir. 2014) (characterizing an order enforcing a settlement agreement as injunctive in nature).

If Plaintiffs had a quarrel with these provisions, the appropriate forum in which to raise it was (and is) the Northern District of California, and the appropriate way to raise it was (and is) through a filing in *House*. The *House* Settlement clearly provides that "Defendants, Plaintiffs, and *each Class Member* hereby irrevocably submit to the *exclusive jurisdiction of the Court* only for the specific purpose of any suit, action, proceeding, or dispute *arising out of or relating to this Agreement or the applicability of*

9

*this Agreement.*" *House* Settlement ¶ 44 (emphasis added).  It goes on to state that "[a]ny

and all claims by *any Division I student-athlete* seeking to challenge the structure or

*otherwise modify the Injunctive Relief Settlement*, or alleging antitrust or other violations

of law based on Defendant's implementation of the Injunctive Relief Settlement, must, to

the fullest extent legally permissible, *be asserted exclusively in the Action.*"  *Id.* ¶ 46

(emphasis added).  These provisions are clear as day and underscore the common sense

point that plaintiffs to a class action settlement cannot seek to alter that settlement through

a different case filed in a different court.  *Celotex Corp. v. Edwards*, 514 U.S. 300, 313

(1995) ("[I]t is for the court of first instance to determine the question of the validity of the

law, and until its decision is reversed for error by orderly review, either by itself or by a

higher court, its orders based on its decision are to be respected." (internal quotations

omitted)).  The fact that *House* is presently on appeal does not change the analysis.

*Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941) ("[I]n the

federal courts the general rule has long been recognized that while appeal with proper

supersedeas stays execution of the judgment, it does not—until and unless reversed—

detract from its decisiveness and finality.").

Even beyond the provisions of the *House* Settlement, it would be wholly improper

to alter an injunction entered by a coordinate federal court.  "[I]ssuance of a preliminary

injunction" that is in direct conflict with a binding decision of another federal district court

"d[oes] a grave disservice to the public interest in the orderly administration of justice."

*Feller v. Brock*, 802 F.2d 722, 727 (4th Cir. 1986).  Where, as here, there exists a direct

conflict between two competing federal district court orders, the courts of appeal have

10

consistently vacated the second-in-time order. *Id.* at 727–28 ("Prudence requires that whenever possible, coordinate courts should avoid issuing conflicting orders."); *Schauss v. Metals Depository Corp.*, 757 F.2d 649 (5th Cir. 1985) ("[W]e believe the judgment was improvidently entered in light of the existing and then valid and operative injunction of the New York district court."); *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."). To the extent the Court intended to enjoin any aspect of the *House* Settlement, its decision is contrary to law.

## C.      The Court Should Further Clarify that it Is Not Enjoining the NCAA's Transfer Rules or the Application of the Age-Based Eligibility Rule.

The Court should also clarify that its injunction does not reach NCAA transfer rules, as requested by Plaintiffs, *see* ECF 19-1 at 21 ¶ 2, or purport to enjoin the application of the Age-Based Eligibility Rule to determine whether members of the putative class are newly eligible for a fifth season of competition. The decision did not include any analysis—antitrust or otherwise—of the transfer rule, so there is no basis for displacing it. And Plaintiffs made clear they were not even challenging the Age-Based Eligibility Rule. ECF No. 1, ¶ 10. Accordingly, it should remain possible for the NCAA's member institutions to deny eligibility to (for example) student-athletes who enrolled in college in the 2022-23 season following their 20th birthday (or any year thereafter) and thus would have exhausted their eligibility in the 2025-26 season (or even earlier) under the NCAA's

new eligibility framework.  But this issue is left unclear by the Court's order, requiring clarification.  *See OCI Wyoming,* 479 F.3d at 1204.

### CONCLUSION

The Court should enter an order compliant with Rule 65 and clarify that it is not enjoining any provisions of the *House* Settlement, the NCAA's transfer rules, or the implementation of the Age-Based Eligibility Rule to members of the putative class.

To the extent the Court finds further briefing necessary, the NCAA respectfully requests that the Court enter a briefing schedule requiring Plaintiffs to respond to this Motion by 5:00pm on Monday, August 3, 2026, the NCAA to reply by Tuesday, August 4, 2026 by 10:00am, and that the Court render a decision by Wednesday, August 5, 2026. The NCAA respectfully submits, however, that the Court may revise the Order on its own accord even earlier, as the local rules make clear that "[n]othing in this rule precludes a judicial officers from ruling on a motion at any time after it is filed." L.R. 7.1(d).

DORSEY & WHITNEY LLP

*/s/ Ben D. Kappelman*
Andrea Ahn Wechter
wechter.andrea@dorsey.com
Ben D. Kappelman
kappelman.ben@dorsey.com
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549

Rakesh N. Kilaru
Wilkinson Stekloff LLP
10th Floor
Washington, DC 20036
Telephone: 202-847-4046
Fax: 202-847-4005

rkilaru@wilkinsonstekloff.com

David J. Zeitlin
Holland & Knight LLP
150 Third Ave. S., Suite 2800
Naville, Tennessee 37208
Telephone: 615-244-6380
Fax: 615-244-6804
david.zeitlin@hklaw.com

**ATTORNEYS FOR DEFENDANT
NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION**

13

# CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2026, I caused the foregoing document, **DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S EMERGENCY MOTION FOR CLARIFICATION OF PRELIMINARY INJUNCTION**, to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Ben D. Kappelman*
DORSEY & WHITNEY LLP

14