IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-03063-CNS-KAS

BROCK WISNE,
AIDAN SHAW,
AISLIN MALCOLM,
CADE TYSON,
ABIGAIL JEFFERIES,
ANTHONY JOHNSON,
LOUIE JORDAN,
JEFFERSON DE LA CRUZ MONEGRO,
ISAIAH JONES,
DIMOND LOOSLI,
BRETT GRIFFITHS, and
JAKE MORELL on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

 NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

      Defendant.

---

**ORDER**

---

      Before the Court is Defendant National Collegiate Athletic Association's (NCAA's) Emergency Motion for Clarification of Preliminary Injunction. ECF No. 40. Having reviewed the motion, no further briefing is necessary for its adjudication. *See* D.C.COLO.LCivR 7.1(d).[1] To the extent that the NCAA seeks clarification regarding the

---

[1] The Court notes that resolution of the NCAA's motion is proper without further briefing from either party, as well as that it is sensitive to the time-sensitive nature of the NCAA's clarification request.

1

Court's order granting Plaintiff's preliminary injunction motion, *see* ECF No. 38, the Court

GRANTS the NCAA's motion. In doing so, the Court presumes familiarity with this case's

factual and procedural background, set forth in the Court's preliminary injunction order.

*See generally id.* The Court addresses the NCAA's points about which it seeks

clarification in order.

First, the NCAA argues that the Court's preliminary injunction order "did not set

forth the terms of the injunction or conduct restrained." ECF No. 40 at 2 (citing Fed. R.

Civ. P. 65). However, the Court specified that Plaintiffs sought relief in the form of a

preliminary injunction "enjoining the NCAA from implementing the Rule as it is currently

promulgated." ECF No. 38 at 5 (citation modified). The Court continued: "Specifically,

Plaintiffs seek equitable relief, on behalf of themselves and the class of Division I athletes

they seek to represent, preventing the NCAA from illegally barring the Class Members

from play." *Id.* (citation modified). In granting Plaintiff's motion, this is precisely the

conduct that the Court restrained.[2]

The Court's analysis confirms that this is the conduct, on the part of the NCAA,

that the Court's order restrains. *See, e.g.,* ECF No. 38 at 2 ("Plaintiffs seek injunctive relief

because implementation of this rule denies them the opportunity to compete in a fifth

season of their collegiate careers, and because this rule and the NCAA's conduct

---

[2] To the extent that the NCAA argues the Court "did not state the reasons why" any injunction should issue, *see* ECF No. 40 at 2 (citation modified), the Court notes that the entirety of its analysis explains why enjoining the Rule's implementation against the Class was proper—because Plaintiffs met their burden of showing it is an unreasonable restraint that, even assuming procompetitive rationales were offered for it, could be accomplished by less anticompetitive means. *See generally* ECF No. 38. And this order now dispels any doubt that the Court has stated the terms of its injunction specifically, by not only describing the acts restrained in reasonable detail, *see* Fed. R. Civ. P. 65(d), but also by providing the NCAA and Plaintiffs with clarification as to what the Court's order did *not* enjoin.

amounts to a violation of federal antitrust law."); *id.* at 19 ("This Rule and the manner of its implementation prohibit Plaintiffs from playing a fifth season of college sports."). Thus, the Court's order—throughout—described in reasonable detail, *see* Fed. R. Civ. P. 65(d)(1)(C), the NCAA's acts to be restrained or required.

However, lest the result of the order be misconstrued, the Court reiterates that the NCAA is enjoined from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule (as defined in the preliminary injunction order) or any NCAA Bylaw.

*Second*, the NCAA appears to harbor confusion—and thus seeks clarification—as to the extent to which the Court's order affects any provision of the *House* settlement agreement. *See* ECF No. 40 at 2; *id.* at 7. Recall the Court's order discussed the *House* settlement agreement *only* to the extent its provisions did not constitute a release, as the NCAA argued, of Plaintiff's claims in this case. The Court's order does not enjoin any provisions of the *House* settlement agreement. Again: to the extent the Court discussed the *House* settlement agreement in its order, it did so only to demonstrate that the *House* settlement agreement neither released, nor had a preclusive effect on, Plaintiffs' antitrust claims based on the Rule's implementation in this case. *See* ECF No. 38 at 17.[3] In other words, the NCAA correctly observes, *see* ECF No. 40 at 8, that the Court did not mention the *House* settlement agreement in the relief that it granted because the Court's order granting relief does not enjoin, or reach, the *House* settlement agreement or its terms.

---

[3] To the extent that the NCAA appears to attempt to relitigate these same *release* issues on the merits in its clarification motion, the Court rejects those same arguments again for the reasons set forth in its preliminary injunction order. *Compare* ECF No. 40 at 3 ("Plaintiffs have released any ability to seek such relief and are in any event precluded from pursuing such relief in this forum.), *with* ECF No. 38 at 17.

For this reason, the Court discerns no basis for the NCAA's argument that the injunction "purports to preclude the NCAA from implementing and enforcing provisions of the *House* settlement." ECF No. 40 at 6 (citation modified).[4]

*Third*, the NCAA seeks clarification as to its rules regulating transfers between institutions. *See* ECF No. 40 at 6, 11. The Court's order does not enjoin the operation of transfer rules. As the plain language of the preliminary injunction order and *this* order make clear, the Court's injunction concerns only the implementation of the Rule (as defined in the preliminary injunction order) and any Bylaw that prohibits Plaintiffs and Class Members from competing in a fifth season of collegiate athletics. Further, to the extent that the NCAA raises what it calls an "Age-Based Eligibility Rule," ECF No. 40 at 11, the Court provides the following clarification. The Court's antitrust analysis did not result in the Court enjoining any member school from making eligibility decisions based on whether a student-athlete was over twenty years of age at the time of their enrollment

---

[4] At the expense of repeating itself—but in the spirit of providing the clarity that the NCAA seeks—the Court's discussion of the *House* settlement agreement was confined almost entirely to the Court's analysis of the NCAA's argument regarding *release.* (And, again, it does *not* release Plaintiffs' antitrust claims in this case.) The first time any party raised the issue of the *House* settlement agreement, its scope, and/or its effect on this case *as a substantive matter* was in the NCAA's response brief. The Court, as noted in its preliminary injunction order, follows and is bound by the party-presentation principle. *See, e.g.*, *Greenlaw v. United States*, 554 U.S. 237, 243 (2008). For this reason, the Court's discussion of the *House* settlement agreement proceeded as the parties presented it: first, by the NCAA, in terms of whether it released Plaintiffs' claims; and then, from Plaintiffs' arguments that it did not do as set forth in their reply brief, and further that the *House* settlement had no preclusive effect on their claims in this case. The Court expresses no opinion on the *substantive* arguments that the NCAA appears to raise regarding the scope of the *House* settlement agreement in its clarification motion—e.g., that  Plaintiffs are members of the *House* settlement class and cannot challenge its roster limits in this judicial district, *see* ECF No. 40 at 9—given that the Court's analysis in this order concerns the NCAA's request for clarification. Notably, however, the NCAA evokes Rules 59 and 60 in its clarification request, *see id.* at 4,  which would prohibit the NCAA from raising any new *substantive* arguments against Plaintiffs' request for injunctive relief that attend the *House* settlement, to the extent that the NCAA chose not to raise these in its response to Plaintiffs' motion. *See, e.g., Hartleib v. Weiser L. Firm, P.C.*, 861 F. App'x 714, 722 (10th Cir. 2021) ("A Rule 59(e) motion may not be used to "advance arguments that could have been raised in prior briefing." (citation modified)).

during the 2022–23 season. This is entirely consistent with the relief that Plaintiffs sought in their preliminary injunction motion. *See* ECF No. 19-1 at 15 ("Plaintiffs are likely to prevail on their claim that the NCAA's implementation of its *Five-Year Rule* violates Section 1 of the Sherman Act." (emphasis added)); *id.* at 5 (observing the Five-Year Eligibility Rule "provides for athletes in Division I programs to compete for five seasons in the five years following the first day of enrollment in a collegiate institution or the first semester following their 19th birthday, subject to narrow predetermined exemptions").

*Fourth*, the NCAA seeks clarification as to the scope of the Class. *See* ECF No. 40 at 6. The Court defined the Class as Plaintiffs sought in their class certification motion because, as explained in the Court's class certification order, Plaintiffs met their Rule 23(a) and Rule 23(b)(2) burdens showing that certification of that proposed class was proper. Thus, to reiterate, Plaintiffs' Class, as certified, is defined as: "All persons in the United States who began to play in collegiate sports in the 2022–2023 season, competed in NCAA Division I sports, and completed four years of eligibility as defined by the NCAA's prior rules by the conclusion of the 2025–2026 season, and are therefore barred from playing a fifth season due to the NCAA's adoption and immediate implementation of the Five-Year Eligibility Rule." ECF NO. 37 at 17. *See also* ECF No. 20-1 at 6.

\* \* \*

To summarize: The NCAA's clarification motion largely seeks clarification of the Court's preliminary injunction order on the basis of what it did not mention—e.g., the *House* settlement agreement (beyond the Court's *release* analysis), roster caps, and transfer rules. The Court did not mention these things because it did not enjoin them. The

5

Court now clarifies that—consistent with the preliminary injunction order, and now the plain language of this order—the NCAA is enjoined from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule (as defined in the preliminary injunction order) or any NCAA Bylaw.

The Court makes a final note. This order changes zero percent of the Court's substantive analysis in its preliminary injunction order. Nor does it change or modify any of the Court's findings of fact or conclusions of law regarding Plaintiffs' antitrust claims, or how they have met their preliminary injunction burdens. It operates solely to provide clarification regarding the scope of relief that the NCAA has requested.[5] Having done so, the Court GRANTS the NCAA's Emergency Motion for Clarification of Preliminary Injunction, ECF No. 40. The Court's preliminary injunction remains in full effect.

DATED this 2nd day of August 20.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

---

[5] *See, e.g., Unishippers Glob. Logistics, LLC v. DHL Express (USA), Inc.*, No. 2:08CV894 DAK, 2009 WL 10674179, at *1 (D. Utah Jan. 12, 2009) (entering order "clarifying and enforcing" a prior order granting preliminary injunction); *Paramount Pictures Corp. v. Carol Pub. Grp., Inc.*, 25 F. Supp. 2d 372, 374 (S.D.N.Y. 1998) (observing it is proper for a district court to "issue an order clarifying the scope of an injunction in order to facilitate *compliance with the order* and to prevent unwitting contempt" (citation modified)).