**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-CV-3063-CNS-KAS

BROCK WISNE,
AIDAN SHAW,
AISLIN MALCOLM,
CADE TYSON,
ABIGAIL JEFFERIES,
ANTHONY JOHNSON,
LOUIE JORDAN,
JEFFERSON DE LA CRUZ MONEGRO,
ISAIAH JONES,
DIMOND LOOSLI,
BRETT GRIFFITHS, and
JAKE MORELL on behalf themselves and all others similarly situated,

*Plaintiffs*,

v.

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

*Defendant*.

---

**PLAINTIFFS' EMERGENCY MOTION TO ENFORCE THE PRELIMINARY INJUNCTION**

---

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1
II. STATEMENT OF FACTS ............................................................................ 2
III. LEGAL STANDARD .................................................................................. 6
IV. ARGUMENT ............................................................................................. 7
  A. The NCAA is Barring the Injunctive Class from the Market ........................ 8
  B. Institutions Still Fear Illegal NCAA Retribution ........................................ 11
  C. Expedited Relief is Necessary to Preserve the Order................................ 12
V. CONCLUSION ........................................................................................... 12

## TABLE OF AUTHORITIES

### Cases

*In re Sunset Sales, Inc.*,
222 B.R. 914 (B.A.P. 10th Cir. 1998) .......... 8

*M.G. through Garcia v. Armijo*,
117 F.4th 1230 (10th Cir. 2024) .......... 9

*Ohio v. NCAA*,
706 F. Supp. 3d 583 (N.D.W.V. 2023) .......... 11

*Rodriguez v. IBP, Inc.*,
243 F.3d 1221 (10th Cir. 2001) .......... 7

*United States v. Ford*,
514 F.3d 1047 (10th Cir. 2008) .......... 6

*United States v. Paradise*,
480 U.S. 149 (1987) .......... 9, 10

*Universal Motor Oils Co. v. Amoco Oil Co.*,
743 F. Supp. 1484 (D. Kan. 1990) .......... 7

### Other Authorities

*Division I: Notification of Transfer*,
NCAA ELIGIBILITY CENTER .......... 5

### Rules

D.C.COLO.LCivR 7.1(a) .......... 1

Federal Rule of Civil Procedure 62(c) .......... 8

## I. INTRODUCTION

Plaintiffs Brock Wisne, Aidan Shaw, Aislin Malcolm, Cade Tyson, Abigail Jefferies, Anthony Johnson, Louie Jordan, Jefferson De La Cruz Monegro, Isaiah Jones, Dimond Loosli, Brett Griffiths, and Jake Morell, on behalf of themselves and the certified Injunctive Class (collectively, "Plaintiffs"), respectfully move this Court to enforce its Preliminary Injunction Order of July 31, 2026, ECF No. 38 (the "Preliminary Injunction Order"), as clarified by the Court's Order of August 2, 2026, ECF No. 41, and for an order directing Defendant National Collegiate Athletic Association ("NCAA") to brief this matter on an expedited basis.[1]

The Preliminary Injunction Order enjoined the NCAA from "prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule […] *or any NCAA Bylaw*." ECF No. 41 at 6 (emphasis added). This Court could not have been clearer that this prohibition encompasses any NCAA Bylaw that might otherwise be invoked to achieve the same prohibited anticompetitive result. The NCAA filed a motion to clarify, resulting in this Court's Order of August 2, 2026, reiterating that the market is to be opened to the Injunctive Class. ECF No. 41 (the "Clarification Order").

For instance, and notwithstanding this unambiguous order, the NCAA has claimed that the Clarification Order does not require these athletes to be allowed to play because, in part, the NCAA has closed the "transfer portal." In sum, the NCAA notified its Division I member-institutions that the Court's Order allows the ministerial closing of a tracking

---

[1] Pursuant to D.C.COLO.LCivR 7.1(a), counsel for Plaintiffs conferred with counsel for the NCAA and made a good faith effort to resolve this matter prior to bringing it to the Court's attention. Parties reached impasse.

database (the NCAA transfer portal) to prevent athletes from transferring, thereby limiting athletes to only enroll at the school they played for in the 2025-26 season and foreclosing the vast majority of the market—including schools that have unfilled roster spots available—to the Injunctive Class.

Named Plaintiffs and Class Members (collectively, "the Injunctive Class") seek relief to address Defendant NCAA's refusal to comply with the central directive of the Preliminary Injunction Order and Clarification Order. Consistent with the antitrust laws, this Court enjoined the defendant from barring the Injunctive Class from competing in a fifth season of collegiate athletics by weaponizing any NCAA Bylaw. *See* ECF No. 41, at 6. Because of the NCAA's defiance of the Preliminary Injunction Order and the Clarification Order, the Injunctive Class has received no assurance, guidance, or indication that they will be able to "compet[e] in a fifth season of college athletics[.]" ECF No. 41, at 6.

## II. STATEMENT OF FACTS

Plaintiffs envisioned many of the challenges that Defendant may cite as barring relief for the Injunctive Class. In their accompanying memoranda for their Preliminary Injunction, Plaintiffs specifically stated that "[t]he NCAA's transfer portal has closed," ECF No. 19-1 at 17, and requested that the Defendant be enjoined from "preventing Plaintiffs and Class Members from playing for any NCAA Division I school because they did not enter the NCAA Transfer Portal." ECF No. 19-1 at 21. Additionally, Plaintiffs described the chillingly punitive impact of the NCAA's "Rule of Restitution" and requested relief from its impacts. ECF No. 19-1 at 20; 21. The sweeping relief awarded by the Court—not trying

to specify every relevant provision of the NCAA's 403-page D1 manual that could be used by the organization to frustrate Class Members' efforts to play a fifth season, but simply enjoining the NCAA from applying any of its rules to frustrate or prohibit access to the market—accords with this request. *See* ECF No. 41 at 6.

On July 31, 2026, the Court issued a detailed Preliminary Injunction Order that granted Plaintiffs' requested injunctive relief; namely ordering the NCAA to cease illegally barring the Injunctive Class from competing in a fifth season of collegiate athletics under the New Eligibility Rule. Immediately, the conversations between the Injunctive Class and coaches began.[2]

Despite the validity of that Order, on August 1, 2026, NCAA Chief Legal Officer Scott Bearby sent a letter to membership that stated "[t]he Court has not yet entered an order specifying what it is purporting to enjoin[.]" Shelquist Decl., Ex. A. The letter offered no guidance that an injunction had taken effect, and instead intentionally implied that the relief would be nonexistent, stating "[e]very federal circuit to address similarly flawed legal claims and similarly deficient evidentiary record has reversed." Shelquist Decl., Ex. A.

Later that date, on August 1, 2026, Defendant filed an Emergency Motion for Clarification of Preliminary Injunction. ECF No. 40.

On August 2, 2026, this Court granted the Motion for Clarification, stating that the Preliminary Injunction Order "specified that Plaintiffs sought relief in the form of a preliminary injunction 'enjoining the NCAA from implementing the Rule as it is currently

[2] CBS Sports reported at 12:38pm EDT on August 1, 2026 that "[s]chools are actively putting together lists and engaging with former players about their interest in a potential return." Shelquist Decl., Ex. F.

promulgated[,]'" and specifically granted equitable relief on behalf of Plaintiffs and Class Members "preventing the NCAA from illegally barring the class members from play." ECF No. 41 at 2 (citing ECF No. 38 at 5).

Within that same Clarification Order, the Court stated that its "injunction concerns only the implementation of the Rule (as defined in the preliminary injunction order) and any Bylaw that prohibits Plaintiffs and Class Members from competing in a fifth season of collegiate athletics." ECF No. 41 at 4. Further, the Court states that "the NCAA is enjoined from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule (as defined in the preliminary injunction order) or any NCAA Bylaw." ECF No. 41 at 6.

On August 2, 2026, Bearbysent a letter to membership that stated "[a]ll other NCAA eligibility rules, including rules regarding professional participation, remain in effect; as the court made clear, it was not ruling on any Bylaws not presented to the Court." Shelquist Decl., Ex. B. The implication was clear; one tactic invoked Sunday afternoon was to block any athlete who had found an open roster spot at another school from having their current school's compliance officer enter the athlete's name in the normally-ministerial transfer portal database. The NCAA unilaterally controls this database. The NCAA was blatantly attempting to once again wield its monopsony power to prevent Class members from participating in the labor market, the very conduct this Court enjoined—but this time, the NCAA claimed to be barring access to that market under the auspices of this Court's orders.

After learning of the NCAA's communication to NCAA Members, the Injunctive Class's counsel sent an email to counsel for the NCAA, advising that their understanding was that the NCAA is providing guidance that "the 5th Year college athlete class can only compete at the school they attended in the 2025-26 season and are otherwise barred from the market to compete for roster spots at any school with openings[,]" and that this would be contrary to the Court's Order barring the NCAA from prohibiting Class Members from competing in a fifth season. Shelquist Decl., Ex. C.

On August 3, 2026, the NCAA responded to Plaintiffs, stating that their position is that "the NCAA transfer rules remain in effect, and if they place restraints on student-athletes or schools seeking to roster student-athletes, those restraints remain in place." Shelquist Decl., Ex. C.

In effect, the NCAA's position means that market participation for most Class members will be limited to one buyer of their labor: the school they attended during the 2025-2026 season.[3] For example, the last transfer window for Division I football closed on January 16, 2026. *See* Shelquist Decl., Ex. G. The NCAA's position appears to be that Injunctive Class Members aiming to compete in their fifth season of Division I football cannot accept a roster spot at any school other than the school they attended during the 2025-2026 season unless in January they informed their school that they intended to transfer *and* their school agreed to enter the athlete's name into the transfer database maintained by the NCAA.[4] Of course, such notification would have been meaningless,

[3] And if that school does not have a spot for them: no buyer exists.
[4] *Division I: Notification of Transfer*, NCAA ELIGIBILITY CENTER, s3.amazonaws.com/fs.ncaa.org/Docs/eligibility_center/Transfer/DI_NOT.pdf (last visited Aug. 3, 2026).

and schools may have refused to enter a Class Member's name into the database, since Class Members at that time had no eligibility remaining. In effect, the NCAA's position is that, unless Class Members anticipated the NCAA's illegal conduct many months prior, and further anticipated that the NCAA would take its current position, they are limited to offering their labor to one buyer only.

Absent clear guidance from Division I collegiate athletics' sole governing body and gatekeeper, NCAA member schools for which Class Members could be valuable contributors have been unsure of how to proceed. A Group of 6 general manager, "citing the memo and the NCAA's determination to fight the ruling, said a rush to add these newly eligible players would be premature." Shelquist Decl., Ex. D. University of Memphis Football Coach Charles Huff told a reporter, "[t]he NCAA and the courts are kind of two different worlds. So once the judgment is made, the NCAA still has to give us direction." Shelquist Decl., Ex. E. Multiple sources speaking to CBS Sports raised similar concerns, and the article noted fears around NCAA Bylaw 12.9.4.2, the "Rule of Restitution," which could "lead the NCAA to vacate wins from a program if it competes with an eligible player, and that court order is eventually overturned." Shelquist Decl., Ex. F.[5]

## III. LEGAL STANDARD

As the moving party, Plaintiffs have the initial burden of proving by clear and convincing evidence that Defendant has disobeyed the terms of a valid injunction and has knowledge of the order. *See United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008).

[5] Among other severe penalties with sweeping competition-based and financial ramifications. *See infra* Section IV.B.

The Court has broad discretion to use its powers to secure compliance with the injunction. *See Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir. 2001). Plaintiffs need not show that the disobedience was willful. *See Universal Motor Oils Co. v. Amoco Oil Co.*, 743 F. Supp. 1484, 1487 (D. Kan. 1990).

## IV. ARGUMENT

The Court's ruling is unambiguous, stating that the NCAA is "enjoined from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule (as defined in the preliminary injunction order) or any NCAA Bylaw." ECF No. 41 at 6. There is a valid injunction, and Defendant is aware of the Order. *See* Shelquist Decl. Ex. B. Defendant defies this Court's Order in two ways: first, by applying its own rules so as not to give the Injunctive Class access to the market and therefore blocking them from that injunctive relief ordered by this Court,[6] and second, by not affirmatively indicating to institutions that it will not retaliate against them if they sign an Injunctive Class Member. Defendant's analysis starts and ends with the phrase, "[t]he Court did not mention these things because it did not enjoin them" but fails to understand what the Court specifically ordered in its plain language: "the NCAA is enjoined from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule (as defined in the preliminary injunction order) or *any NCAA Bylaw.*" ECF No. 41 at 6. Under such guidance, the NCAA must use its discretion to ensure that none of its own Bylaws stand in the Injunctive Class's path to participating in

[6] Including by deliberately and misleadingly characterizing the impact of the Court's order in communications to NCAA members so as to chill market activity.

a fifth season. It refuses to do so, attempting to subvert the Preliminary Injunctive Order: substituting its own interpretation of what the Court ordered in the place of what the Court actually enjoined.

### A. The NCAA is Barring the Injunctive Class from the Market

The order clearly states that the NCAA may not use any of its Bylaws to block the Injunctive Class from accessing the market for a fifth season.[7] *See* ECF No. 38 at 5; ECF No. 41 at 6. Despite this, the NCAA has issued no guidance indicating that players who should have access to the market may do so under the ordered injunctive relief.[8] Instead, Defendant states that "NCAA [Bylaws] remain in effect, and if they place restraints on student-athletes or schools seeking to roster student-athletes, those restraints remain in place." Shelquist Decl. Ex. C. This position is directly contradictory to the order of this Court, which enjoins Defendant from enforcing those very restraints the NCAA improperly touts as remaining in place. *See* ECF No. 41 at 6; Shelquist Decl. Ex. C. That this Court has not enjoined a rule in its entirety does not mean that any other NCAA rule is exempt from the breadth of "any Bylaw" that would prohibit Plaintiffs and Class Members from competing; Defendant should understand how to obey the obvious command of this

[7] The NCAA contends that it should not have to consider this issue because Plaintiffs "TRO/PI motion contained no analysis or evidence regarding any NCAA transfer rule." Shelquist Decl. Ex. C. Not so. *See supra* Section II. This is plainly false.

[8] On August 2, 2026, Defendants filed an Emergency Motion to Stay the Order for Preliminary Injunction. *See* ECF No. 43. Briefing is currently ongoing before this Court. Until this Court rules on that motion, the ordered Injunction remains in effect. Federal Rule of Civil Procedure 62(c) confirms as much, providing that an injunction is "not stayed after being entered, even if an appeal is taken," unless the court orders otherwise. This reflects a long-standing rule: "an appeal from a decree granting, refusing or dissolving an injunction does not disturb its operative effects" absent a stay pending appeal. *In re Sunset Sales, Inc.*, 222 B.R. 914, 918 (B.A.P. 10th Cir. 1998), *aff'd*, 195 F.3d 568 (10th Cir. 1999) (citing Fed. R. Civ. P. 62(c)). The mere pendency of an unresolved motion to stay, like an unresolved appeal, does not itself stay the Court's Order.

injunction. *See M.G. through Garcia v. Armijo*, 117 F.4th 1230, 1250 (10th Cir. 2024) (Holding that "breadth and flexibility are inherent in equitable remedies." (citing *United States v. Paradise*, 480 U.S. 149, 183–184 (1987)).

The Court's injunction made clear that it concerns "any Bylaw that prohibits Plaintiffs and Class Members from competing in a fifth season of collegiate athletics." ECF No. 41 at 4. Yet, the NCAA informed its membership that this Court "was not ruling on any Bylaws not presented to [it]." Shelquist Decl. Ex. B. This is not the language of the Court's Order. *See* ECF No. 38 at 5; ECF No. 41 at 6. In fact, language regarding the Court's Order as solely being binding on those Bylaws presented to it is not found anywhere in the Court's Clarification Order. *See* ECF No. 41. The Court plainly extended its ruling to any NCAA Bylaw that prohibits the Injunctive Class from access to the market. *See* ECF No. 41 at p. 6. Defendants August 2, 2026, communication was contrary to this Court's ruling. *See* Shelquist Decl. Ex. B.[9]

Barring the Injunctive Class from the market is clearly contrary to the Court's Order to ameliorate the NCAA's monopsony power to exclude these athletes from the Division I labor pool. For instance, the NCAA has instructed its members that transfer rules apply. As it stands, numerous members of the Injunctive Class did not enter the transfer portal. The transfer portal is only open during windows set by the NCAA's Division I Manual. *See* Shelquist Decl. Ex. G, NCAA Division I Manual, Figure 13-1 (listing the transfer windows for Division I athletics). For the vast majority of D1 sports, transfer windows closed long

[9] Even under the NCAA's analysis, Plaintiffs and the Court contemplated the Bylaws at issue. *See* ECF No. 19-1 at 21, ¶¶ 2; 4.

before the NCAA's announcement of the new rule in June of 2026. *See* ECF No. 38 at n. 3; Shelquist Decl. Ex. G. Athletes had no capacity to foresee the rule change and seek to enter the portal months prior to its announcement. *See* Malcolm Decl. at ¶ 8. Additionally, some of these athletes were waiting for waivers that the NCAA has still declined to rule on. *See* Malcolm Decl. at ¶ 4. Because these candidates' schools did not enter their names in the transfer portal, at present there is no means for them to access the market for additional offers for a fifth year of eligibility due to the NCAA's flawed interpretation of this Court's Order, which it is actively communicating to NCAA member schools in order to prevent them from offering roster spots to Class Members. *See* Malcolm Decl. at ¶ 7. This means numerous Class Members who could compete in a fifth season of collegiate athletics are being barred from doing so by Defendant, contrary to this Court's Injunctive Order. *See id.*; *contra* ECF No. 41 at 6. In refusing to issue guidance, offer waivers, create an additional transfer portal window, or implement any solution—all tools well within Defendants' control and governed by their Bylaws—the NCAA is creating an obstacle course that has the predictable effect, if not the intention, of prohibiting Injunctive Class Members from "competing in a fifth season of collegiate athletics." [10] *See e.g. Paradise*, 480 U.S. at 183–84. In creating these obstacles, Defendant is in defiance of this Court.

---

[10] Notably, in this Court's Preliminary Order Ruling it found that "Plaintiffs' proposed waivers, whose administration appear entirely possible and feasible under the NCAA's current Bylaws, would 'eliminate the anticompetitive harm' that Plaintiffs and class members face under the Rule's impending implementation." ECF No. 38 at 44. Again, it seems entirely possible that Defendant could simply comply through issuing a blanket waiver to the Injunctive Class.

**B. Institutions Still Fear Illegal NCAA Retribution**

The text of the order unambiguously enjoins the NCAA from using "any NCAA Bylaw" to prohibit the Injunctive Class from competing in a fifth season of collegiate athletics: this includes the medievally-named "Rule of Restitution." This rule, NCAA Bylaw 12.9.4.2, allows the NCAA to retroactively punish an athlete, their coaches, teammates, opponents, and their institution if a court-ordered injunction is later overturned on appeal. *See* ECF No. 19-1 at 20. The punishment is vicious, including vacating athletic records, stripping championships, declaring the institution ineligible for postseason play, requiring remission of television receipts, and imposing severe financial penalties. Its purpose is clear: to make colleges extremely hesitant to play athletes targeted for exclusion by the NCAA, because the cost of doing so if the NCAA wins on appeal would be dire. *See* ECF No. 19-1 at 20. Schools that view an athlete as a potentially valuable member of their team and might otherwise support an athlete's legal challenge are chilled into compliance, and the NCAA is able to undermine any Court injunction that may still be appealable.

Given the power of the Rule of Restitution, "many Division I institutions will not permit the student-athlete to compete, even if a court issues a temporary restraining order or a preliminary injunction finding that those rules are likely illegal." *Ohio v. NCAA*, 706 F. Supp. 3d 583, 601 (N.D.W.V. 2023). The NCAA has not affirmatively communicated to institutions that it will not enforce the Rule of Restitution with respect to this case, allowing for that further belief that those institutions who abide by this Court's Order could still be punished for it. As the Court's order blocks the NCAA from using *any Bylaw* to hinder compliance with the injunction, this too includes the Rule of Restitution (Bylaw 12.9.4.2),

and the NCAA should not be allowed to use its specter from keeping its members from adding athletes in the Injunctive Class. *See* ECF No. 41 at 6.

### C. Expedited Relief is Necessary to Preserve the Order

The Court initially granted Plaintiff's motion, specifically ordering the NCAA from "illegally barring the Class Members from play[,]" ECF No. 38 at 5 (citation modified) and enjoining the NCAA from "prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule (as defined in the preliminary injunction order) or any NCAA Bylaw." ECF No. 41 at 6. The NCAA's communications with member institutions make apparent that Defendant does not intend to fully give access to the market as is required under this ruling and is using NCAA Bylaws to prohibit the Injunctive Class from competing in a fifth season of collegiate athletics. That refusal now necessitates a further order from the Court. But time is short, as fall seasons of athletics draw nearer. The NCAA has continued to put out inaccurate materials indicating that these athletes are barred from the market and deny them access to that fifth season. The irreparable harm that brought about this injunctive relief compounds further as that granted relief is denied. *See* ECF No. 38 at 45–47. Plaintiffs and Class Members respectfully request that the Court expedite responsive briefing and schedule any hearing deemed warranted at the Court's earliest convenience.

## V. CONCLUSION

Plaintiffs respectfully request that this Court grant their motion and enter an order:

(1) Directing the NCAA to immediately cease enforcement or execution against Plaintiffs and Class Members of any Bylaws, policies, or administrative

procedures prohibiting them from negotiating for and accepting the opportunity to compete on a Division I team during the 2026-2027 season at any school that wishes to negotiate and/or offer such an opportunity;

(2) Requiring the NCAA to issue a clarifying notice to its Division I member-institutions, accurately advising them that Class members remain eligible to accept roster spots and compete at any available Division I school pursuant to this Court's Preliminary Injunction Order and Clarification Order, regardless of any NCAA Bylaw that may attempt to punish them for playing such Class members (e.g., the "Rule of Restitution");

(3) Instructing the NCAA to report what steps it has taken to comply with this Court's orders specifically outlining the process in place so an athlete can sign for a fifth year, whether that player intends to sign at the school they attended and competed for in 2025-2026 or at another institution in 2026-27;

(4) If necessary, expediting the schedule for briefing and any argument on this motion; and

(5) For such other relief as may be just and proper.

DATED: August 4, 2026

*<u>/s/ Robert K. Shelquist</u>*
Robert K. Shelquist
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
5775 Wayzata Blvd., Suite 6220
St. Louis Park, MN 55416
Telephone: 202-789-3960
rshelquist@cuneolaw.com

Christian Hudson

Alexandra Klein
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
222 Livingston Street, Unit 2
Brooklyn, NY 11201
Telephone: 202-789-3960
christian@cuneolaw.com
aklein@cuneolaw.com

Michael J. Flannery
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
Two CityPlace Drive
St. Louis, MO 63141
Telephone: (314) 330-2771
mflannery@cuneolaw.com

Alexandra Warren
**CUNEO GILBERT FLANNERY & LADUCA, LLP**
2445 M Street NW, Ste. 740
Washington, D.C. 20037
Telephone: 202-789-3960
awarren@cuneolaw.com

Elliot S. Abrams
**CHESHIRE PARKER SCHNEIDER & ABRAMS, PLLC**
133 Fayetteville Street, 4th Floor
P.O. Box 1029
Raleigh, NC 27602
Telephone: 919-833-3114
Facsimile: 919-832-07739
elliot.abrams@cheshirepark.com

J. Barton Goplerud*
**SHINDLER, ANDERSON, GOPLERUD & WEESE, P.C.**
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: 515-223-4567
Facsimile: 515-223-8887
goplerud@saglaw.com

C. Peter Goplerud III
**NATIONAL LITIGATION LAW GROUP**
401 W. Broadway Ave.
Enid, OK 73701
Telephone: 904-502-9515
pgoplerud@nationlit.com

Robert A. Boland
Diana Florence
**SHUMAKER, LOOP & KENDRICK, LLP**
1000 Jackson Street
Toledo, OH 43604
rboland@shumaker.com
dflorence@shumaker.com

Bruce L. Braley
Alex R. Wilschke
Brian N. Aleinikoff
Adrian G. Johnson
**LEVENTHAL PUGA BRALEY P.C.**
950 S. Cherry St, Suite 600
Denver, CO 8026
Telephone: 303-759-9945
Facsimile: 303-759-9692
bbraley@leventhal-law.com
awilschke@leventhal-law.com
brian@leventhal-law.com
ajohnson@leventhal-law.com

***Counsel for the Injunctive Class***
* *to be admitted*.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2026, I caused the foregoing document, **PLAINTIFFS' MEMORANDUM OF LAW AND FACTS IN SUPPORT OF THEIR MOTION TO ENFORCE THE PRELIMINARY INJUNCTION**, to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Robert K. Shelquist*
CUNEO GILBERT FLANNERY & LADUCA, LLP