# EXHIBIT A

X

← **Post**



**Ben Portnoy**
@bportnoy15

The latest NCAA memo from Chief Legal Office Scott Bearby that was just sent to NCAA membership

Colleagues,

We understand that the *Wisne* decision from Colorado has created significant uncertainty. I'm writing to provide clarity on where the case stands and expected next steps. We hope and expect to have further clarity next week on the appellate process, and whether the injunction will remain in effect. Details of the steps and timeline are included below.

First, the injunction is limited only to class members. The court defined the class as "all persons in the United States who began to play in collegiate sports in the 2022–2023 season, competed in NCAA Division I sports, and completed four years of eligibility as defined by the NCAA's prior rules by the conclusion of the 2025–2026 season, and are therefore barred from playing a fifth season due to the NCAA's adoption and immediate implementation of the Five-Year Eligibility Rule."

Second, as I noted in my earlier emails (Aug. 1 memo, Aug. 2 memo ), the judge clarified on Sunday that she was not enjoining any aspects of the House Settlement or Division I transfer rules. As a result, roster limits and the revenue share cap under House remain in effect. So do the transfer rules. That includes the rule recently passed by the Division I Cabinet—with overwhelming membership support—to penalize schools involved in "ghost transfers" of student-athletes who did not enter the transfer portal during sport-specific windows. If a team elects to roster such student-athletes, the team's head coach will be suspended for 50% of the season and the athletic department will be fined. Schools are expected to self-apply these penalties and if they do not, additional penalties follow.

Third, the professional participation rules and rules regarding agents also remain in effect. Those rules were not before the judge. As a general matter, individuals who leave college sports to pursue professional opportunities are ineligible to return. Schools seeking to roster such players are expected to comply with all NCAA rules.

Today, the *Wisne* plaintiffs filed a motion before the same judge to relitigate some of these issues. We intend to oppose their efforts to do so.

At the same time, we are moving forward with the appellate process. Sunday night the notice of appeal was filed with the Tenth Circuit, as well as a motion asking the Colorado judge to stay her injunction during the appellate process. The NCAA is required to file this stay motion initially with the trial judge. The judge set a schedule under which the parties will exchange briefs between now and next Monday, August 10, with a decision to follow soon after. We will try to expedite this process as much as possible.

If the judge denies our motion for a stay, the NCAA will immediately ask the Tenth Circuit to enter a stay pending appeal, including a request of the Tenth Circuit for what is known as an "administrative stay," which is an order pausing the injunction temporarily while the court decides whether to pause it for the duration of our appeal. If any of our stay motions are granted, we will return to the status quo before *Wisne*, with the age-based eligibility rules being implemented as the membership intended.

The *Wisne* case is just one of many cases challenging the eligibility framework adopted by the membership. While we are trying to pause further lawsuits in light of the *Wisne* decision, we may not succeed everywhere, and it is possible that individual or group actions will proceed in other courts while the *Wisne* litigation continues. We will oppose such additional lawsuits but of course comply with any court orders that are issued.

In closing, we recognize that this is a challenging time. But as I noted yesterday, preliminary injunctions are typically short-term and we remain confident in our legal position. We are working to restore the status quo as soon as possible, because the status quo represented the considered judgment of the membership about what was best for all student-athletes, including the many thousands already on campus who are just starting their college athletics careers.

Scott Bearby
NCAA Chief Legal Officer

5:59 PM · Aug 4, 2026 · **9.8K** Views

1 10 17 10

**See all the replies**

Continue to X

We understand that the *Wisne* decision from Colorado has created significant uncertainty. I'm writing to provide clarity on where the case stands and expected next steps. We hope and expect to have further clarity next week on the appellate process, and whether the injunction will remain in effect. Details of the steps and timeline are included below.

First, the injunction is limited only to class members. The court defined the class as "all persons in the United States who began to play in collegiate sports in the 2022–2023 season, competed in NCAA Division I sports, and completed four years of eligibility as defined by the NCAA's prior rules by the conclusion of the 2025–2026 season, and are therefore barred from playing a fifth season due to the NCAA's adoption and immediate implementation of the Five-Year Eligibility Rule."

Second, as I noted in my earlier emails (Aug. 1 memo, Aug. 2 memo ), the judge clarified on Sunday that she was not enjoining any aspects of the House Settlement or Division I transfer rules. As a result, roster limits and the revenue share cap under House remain in effect. So do the transfer rules. That includes the rule recently passed by the Division I Cabinet—with overwhelming membership support—to penalize schools involved in "ghost transfers" of student-athletes who did not enter the transfer portal during sport-specific windows. If a team elects to roster such student-athletes, the team's head coach will be suspended for 50% of the season and the athletic department will be fined. Schools are expected to self-apply these penalties and if they do not, additional penalties follow.

Third, the professional participation rules and rules regarding agents also remain in effect. Those rules were not before the judge. As a general matter, individuals who leave college sports to pursue professional opportunities are ineligible to return. Schools seeking to roster such players are expected to comply with all NCAA rules.

Today, the *Wisne* plaintiffs filed a motion before the same judge to relitigate some of these issues. We intend to oppose their efforts to do so.

At the same time, we are moving forward with the appellate process. Sunday night the notice of appeal was filed with the Tenth Circuit, as well as a motion asking the Colorado judge to stay her injunction during the appellate process. The NCAA is required to file this stay motion initially with the trial judge. The judge set a schedule under which the parties will exchange briefs between now and next Monday, August 10, with a decision to follow soon after. We will try to expedite this process as much as possible.

If the judge denies our motion for a stay, the NCAA will immediately ask the Tenth Circuit to enter a stay pending appeal, including a request of the Tenth Circuit for what is known as an "administrative stay," which is an order pausing the injunction temporarily while the court decides whether to pause it for the duration of our appeal. If any of our stay motions are granted, we will return to the status quo before *Wisne*, with the age-based eligibility rules being implemented as the membership intended.

The *Wisne* case is just one of many cases challenging the eligibility framework adopted by the membership. While we are trying to pause further lawsuits in light of the *Wisne* decision, we may not succeed everywhere, and it is possible that individual or group actions will proceed in other courts while the *Wisne* litigation continues. We will oppose such additional lawsuits but of course comply with any court orders that are issued.

In closing, we recognize that this is a challenging time. But as I noted yesterday, preliminary injunctions are typically short-term and we remain confident in our legal position. We are working to restore the status quo as soon as possible, because the status quo represented the considered judgment of the membership about what was best for all student-athletes, including the many thousands already on campus who are just starting their college athletics careers.

Scott Bearby
NCAA Chief Legal Officer