**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-03063-CNS-KAS

Brock Wisne,
Aidan Shaw,
Aislin Malcolm,
Cade Tyson,
Abigail Jefferies,
Anthony Johnson,
Louie Jordan,
Jefferson De La Cruz Monegro,
Isaiah Jones,
Dimond Loosli,
Brett Griffiths, and
Jake Morell on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

National Collegiate Athletic Association,

Defendant.

---

**DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S REPLY IN SUPPORT OF MOTION FOR ADMINISTRATIVE STAY AND MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL**

---

The NCAA's Motion to Stay, ECF No. 43, explained both why a stay pending appeal is warranted and why an administrative stay pending resolution of this motion was warranted. While Plaintiffs claim that the injunction has not disrupted college sports in any way and should remain in effect, the real-world effects on student-athletes, let alone the NCAA and its members, are significant and should be paused pending the Tenth Circuit's review of the preliminary injunction in this case.

The Court has effectively denied the NCAA's request for an administrative stay, so the NCAA submits this reply before the due date in the hopes of obtaining a ruling on its stay request as quickly as possible. Defendant respectfully requests a ruling by 12 PM on Monday, August 10; absent such a ruling, Defendant intends to seek a stay pending appeal and an administrative stay from the Tenth Circuit.

Plaintiffs' opposition largely relitigates the merits of the issues originally before the Court. The NCAA thus responds only to the following new arguments:

1. Plaintiffs' suggestion that the NCAA has engaged in improper procedural tactics, Plfs.' Response to Defendant's Emergency Motion ("Resp.") at 1 (ECF No. 50), is without merit. After the Court issued its ruling on the motion to clarify, the NCAA promptly requested a stay pending appeal. At the same time, it informed its membership of its good-faith understanding of the scope of this Court's injunction after both the original order and the clarification order. Plaintiffs have apparently decided to relitigate the Court's clarification order in the hopes of obtaining, through contempt proceedings, relief from Bylaws that they failed to validly challenge (or, in many instances, even mention). *See* ECF No. 51 (NCAA's Resp. to Motion to Enforce). The NCAA has separately

explained why that tactic should fail, *see id.*, but nothing about the NCAA's decision to seek a stay or inform its membership of its understanding of the Court's decision suggests that the NCAA is not turning square corners.

Plaintiffs' contentions about the JPML process are not well taken. On Friday, July 31, the NCAA sought consolidation of eight pending federal lawsuits raising antitrust challenges against the NCAA's eligibility rules. *See* Motion to Transfer, MDL No. 3198 (JPML Aug. 1, 2026), ECF No. 1. As NCAA Counsel already explained to Plaintiffs' Counsel, there was a minor error in filing, and the NCAA worked with the JPML's docketing clerk to rectify the error. Resp., Ex. F (ECF No. 50-7). While the filing process was underway at the time this Court issued its decisions certifying the class and issuing a preliminary injunction, the NCAA's filing made clear that both motions were pending. *See* NCAA's Brief in Support at 8, MDL No. 3198 (JPML Aug. 1, 2026), ECF No. 1-1.. As soon as the correct papers were on file, the JPML publicly docketed the proceeding and the NCAA separately served the relevant papers upon all counsel of record. No other counsel has suggested there was any procedural impropriety, and Plaintiffs fail to explain how they have been prejudiced in any way. By order of the JPML, they will be able to file a response to the motion to consolidate on August 26, 2026. *See* Notice of Filing & Publ. of Briefing Sched., MDL No. 3198 (JPML Aug.. 5, 2026), ECF No. 4. If Plaintiffs wish to express a preference for remaining in this Court for pretrial purposes, they will be free to do so and the NCAA will respond in due course.

Last, Plaintiffs' complaints about the NCAA's efforts to stay other state-court actions, Resp. at 1, ring hollow. This Court changed the status quo by enjoining the

application of existing NCAA rules to the class in this case. The NCAA is appealing that order and has sought a stay, but the Court's ruling currently remains in effect. It makes no sense for class members to relitigate the same issues in other courts so long as this Court's order remains in effect. Plaintiffs' apparent preference for duplicative and wasteful litigation by their own class members is hard to understand.

2. In responding to the NCAA's argument about *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188 (10th Cir. 2009), Plaintiffs suggest the NCAA is mistaken in asserting that they did not challenge the age-based eligibility rule. But in their Complaint, Plaintiffs said they "do not challenge the [age-based eligibility rule] as a whole in this action," but rather "the application of the rule by the NCAA" to exclude "Plaintiffs and 2022 classmates who played four straight seasons from playing a fifth." Compl. ¶ 10. (As an aside, it is important to note that Plaintiffs' suggestion that the NCAA "singl[ed] out" the incoming class of 2022 is false; student-athletes who enrolled in Spring 2021, Fall 2021, Winter 2021, and Spring 2022 also received four seasons of competition, as well as many years of student-athletes before the unprecedented COVID-19 pandemic.) And now, Plaintiffs confirm the point, saying that they "did not challenge the NCAA adopting an age-based eligibility model." Resp. at 4.

That is precisely what renders *Christy Sports* on point. As the NCAA has previously explained, that case was about the timing of implementation of a rule that the plaintiffs did not challenge on the merits. Plaintiffs seek to limit *Christy Sports* to its facts, *see* Resp. at 5, but that is not the appropriate lens through which district courts should interpret Tenth Circuit precedent. Plaintiffs change nothing by citing a passage

suggesting that liability may have been proper in *Christy Sports* if the defendant had "invit[ed] an investment and then disallow[ed] the use of the investment." *Id.* (*quoting Christy Sports*, 555 F.3d at 1196). Plaintiffs assert, without citation, that here "there are such allegations, and evidence behind them," *id.*, but that is not true. Plaintiffs knew they would have only four seasons of competition on the day they stepped on campus, on the day they began their second year, on the day they began their third year, on the day they began their fourth year, and on the last day of their last season. There was no "investment" in a fifth season or any indication that they might receive one.

3. Plaintiffs are likewise wrong to recharacterize all of the NCAA's rule of reason arguments as subject to clear error review. The NCAA does "claim legal error," *see* Resp. at 5, namely the court's granting of an antitrust injunction against an eligibility rule without any of the evidence that every federal circuit to address the matter has said is required.

Plaintiffs now attempt to recharacterize their market definition in two ways, but neither is availing. *First*, Plaintiffs suggest that the relevant question is whether athletes would leave Division I sports if the "price paid" within that form of athletic competition were lower. Resp. at 6. That is wrong; the market definition question is whether the market alleged captures all reasonable substitutes. *See* ECF No. 32-3 ("Backus Decl.") at ¶¶ 41-43. The NCAA acknowledges that Dr. Berri *asserted* that "student-athletes have nowhere else to sell their labor," Resp. at 6 (quoting *NCAA v. Alston*, 594 U.S. 69, 90 (2021)). But the relevant question is whether Dr. Berri substantiated that point in any way. He presented *literally no evidence* of substitution options for the vast majority of Division I

sports, and as the NCAA has explained, the little analysis he did in three sports was both cherry-picked and based on outdated data. *E.g.*, Backus Decl. at ¶ 45.

Plaintiffs' citation to "another court in the Tenth Circuit" on this front is revealing. Resp. at 6. The case they cite, *Martinson v. NCAA*, 804 F. Supp. 3d 1109, 1125 (D. Nev. 2025), was from a district court in the Ninth Circuit, not the Tenth Circuit. And while the Ninth Circuit has not yet decided that case, a few facts bear noting. Martinson's season expired before the appellate argument in that case. Just days before *Martinson* was argued, the Ninth Circuit fast-tracked the appeal in *Blythe v. NCAA*, No. 26-1106 (9th Cir. Mar. 12, 2026), ECF No. 16-1, and then vacated that injunction the day after argument, ECF No. 26 (Apr. 8, 2026). The record in *Blythe*, which Plaintiffs say was "much weaker" than here, Resp. at 5 & n.4, was identical to the record in *Martinson*, which they feature in their brief, Resp. at 6.

*Second*, Plaintiffs try to change the market they pleaded, claiming that what matters is the interchangeability of buyers, not student-athletes. Resp. at 7. The NCAA disagrees, *see* Backus Decl. at ¶ 45, but even accepting Plaintiffs' position would not fix the problem with Dr. Berri's analysis. For a Division I women's lacrosse player, a Division I men's football team is not a reasonable substitute. While Plaintiffs now try to claim that Dr. Berri defined "submarkets," Resp. at 7, that is misleading in the extreme. Dr. Berri's position is that "the NCAA controls the market for all Division-I athletes." ECF No. 35-15 ("Berri Reply Decl.") at ¶ 21. Dr. Berri's only reference to submarkets was in referencing *Dr. Backus*'s work, *id.*; Dr. Berri nowhere purported to define or substantiate submarkets of his own.

Last, Plaintiffs suggest that the NCAA's argument should be rejected because it did not "offer a market of its own," and that the NCAA is obligated to do so to obtain a stay. Resp. at 8. That is classic burden-shifting. Plaintiffs had the burden of proof to establish the relevant market, and they failed to meet it. Plaintiffs can continue to *assert* that "very few NCAA Division I athletes have any opportunity to sell their labor elsewhere," Resp. at 8, but saying something is not enough, particularly in the context of a "disfavored" mandatory injunction, *see O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

4. Plaintiffs' cursory response on anticompetitive effects is revealing. They claim that *Fourqurean* is distinguishable because the court there observed that "the record contains no evidence that would allow us to draw" the conclusion that college athletics are not a market subject to ordinary principles of supply and demand." Resp. at 9 n.7 (quoting *Fourqurean v. NCAA*, 143 F.4th 859, 871 (7th Cir. 2025)). But Plaintiffs presented no evidence of market conditions in the year following the "seismic effects" of the *House* Settlement, including revenue sharing. *See Pavia v. NCAA*, 154 F.4th 407, 417 (6th Cir. 2025) (Thapar, J., concurring). That is the absence of evidence to which the *Fourqurean* court was referring.

Plaintiffs' argument that the "NCAA's indirect-effects theory" was "not presented," Resp. at 10, is likewise misguided. Plaintiffs did not rely on the possibility of increased NIL spending from third parties to support their claim of a wage effect, as evidenced by their request that the Court enjoin the *House* Settlement's revenue sharing cap to permit more compensation within the market. ECF No. 19-1, at 21 ¶ 4. The Court relied on

third-party NIL compensation because it elected not to displace the *House* Settlement, and so it is appropriate for the NCAA to address that issue now.

5. Finally, Plaintiffs' arguments about harm and the equities miss the mark. It is hard to take seriously the contention that the Court's injunction has not caused chaos, or the diminution of the NCAA's ability to effectively administer college athletics. That much is evident from Plaintiffs' solution to the problem created by the return of a class they called numerous—and that may number in the many thousands—which is for the NCAA to "choose to raise its roster limits." Resp. at 12. If the only way to equitably administer an injunction without harming thousands of underclassmen is to change *other* rules—at the same time Plaintiffs are apparently also seeking to displace other eligibility rules that those underclassmen have to comply with, *see* ECF No. 46—it is a good sign of the need to take a pause. The 2026-27 college sports season should not be turned upside down, and the NCAA Manual rewritten, based on a record assembled in just a few days without any form of hearing. For the same reasons, Plaintiffs' arguments regarding their claimed harm and the public interest fail.

## CONCLUSION

The NCAA respectfully requests that the Court stay its injunction pending appeal.

Respectfully submitted this 7th day of August, 2026.

DORSEY & WHITNEY LLP

*/s/ Andrea Ahn Wechter*
Andrea Ahn Wechter
wechter.andrea@dorsey.com
Ben D. Kappelman

kappelman.ben@dorsey.com
DORSEY & WHITNEY LLP
1400 Wewatta Street, Suite 400
Denver, CO 80202-5549

Rakesh N. Kilaru
Wilkinson Stekloff LLP
10th Floor
Washington, DC 20036
Telephone: 202-847-4046
Fax: 202-847-4005
rkilaru@wilkinsonstekloff.com

David J. Zeitlin
Holland & Knight LLP
150 Third Ave. S., Suite 2800
Naville, Tennessee 37208
Telephone: 615-244-6380
Fax: 615-244-6804
david.zeitlin@hklaw.com

**ATTORNEYS FOR DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION**

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, I caused the foregoing document, **DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION'S REPLY IN SUPPORT OF MOTION FOR ADMINISTRATIVE STAY AND MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL,** to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Andrea Ahn Wechter*
DORSEY & WHITNEY LLP