IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-03063-CNS-KAS

BROCK WISNE,
AIDAN SHAW,
AISLIN MALCOLM,
CADE TYSON,
ABIGAIL JEFFERIES,
ANTHONY JOHNSON,
LOUIE JORDAN,
JEFFERSON DE LA CRUZ MONEGRO,
ISAIAH JONES,
DIMOND LOOSLI,
BRETT GRIFFITHS, and
JAKE MORELL on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

 NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,

     Defendant.

---

**ORDER**

---

Before the Court is Defendant National Collegiate Athletic Association's (NCAA's) Emergency Motion for Administrative Stay and Motion to Stay Preliminary Injunction Pending Appeal. ECF No. 43. The motion is fully briefed. *See also* ECF No. 50; ECF No. 52. The motion is DENIED.

Before explaining why, the Court makes a preliminary observation. The NCAA advances an argument in its stay motion that it previously advanced in opposition to

1

Plaintiffs' preliminary injunction motion: The Court has no business engaging in "judicial micromanagement," ECF No. 43 at 16, of how the NCAA implements its own rules, including the Five-Year Eligibility Rule (the Rule) that Plaintiffs challenged in their preliminary injunction motion, *see Wisne v. Nat'l Collegiate Athletic Ass'n,* No. 1:26–cv–03063–CNS–KAS, 2026 WL 2214234, at *2 (D. Colo. July 31, 2026) (explaining Five-Year Eligibility Rule).

In its preliminary injunction order, the Court acknowledged the "wide berth" that it must afford "to business judgments before finding antitrust liability," *id.* at *20 (citation modified), and it provided such a wide berth in its consideration of the parties' arguments. Yet this does not absolve the NCAA of its obligation to comply with federal antitrust law, nor does it absolve the Court of its obligation to apply that law to the facts of this—or any—case. *See id.* ("[The Court] is neither an economic nor industry expert. However, the Court must also 'discern and apply the law' as it 'finds it.' (citation modified, then quoting *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023)). And in this case, the record showed—and continues to show, as explained below—that the NCAA is in a bind of its own making. In other words, its own business judgment gave rise not only to the Court's finding that Plaintiffs had shown that they were likely to succeed on the merits of their Sherman Act claim but also gave rise to exactly the "chaos" about which the NCAA now complains. At bottom, the NCAA made its own choice which comes with its own consequences.

Accordingly, and for the seasons set forth below, the NCAA fails to meet its burden of showing that it is entitled to a stay of the Court's preliminary injunction order.

2

## I.    BACKGROUND

The Court set forth this case's factual and procedural background in its order granting Plaintiffs' preliminary injunction motion. *See Wisne*, 2026 WL 2214234, at *1–3. It incorporates that background here, while also providing additional background facts that attend case developments following the Court's issuance of its preliminary injunction and class certification orders on July 31, 2026. *See generally id.*; *see also* ECF No. 37 (granting Plaintiffs' motion for class certification).

On August 1, 2026, the NCAA filed an emergency motion to clarify the Court's preliminary injunction order. ECF No. 40. The Court granted the NCAA's motion the following day, providing clarification as to the scope of its order. *See* ECF No. 41 at 5.[1] The Court elaborated that its clarification order "change[d] zero percent of the Court's substantive analysis in its preliminary injunction order. Nor d[id] it change or modify any of the Court's findings of fact or conclusions of law regarding Plaintiffs' antitrust claims, or how they have met their preliminary injunction burdens." *Id.* Instead, the clarification order "operate[d] solely to provide clarification regarding the scope of relief that the NCAA ha[d] requested." *Id.*

The NCAA filed the instant stay motion on August 2, 2026. ECF No. 43. And the NCAA appealed the Court's preliminary injunction and clarification orders on August 3,

---

[1] The Court stated that "The NCAA's clarification motion largely seeks clarification of the Court's preliminary injunction order on the basis of what it did not mention—e.g., the House settlement agreement (beyond the Court's release analysis), roster caps, and transfer rules. The Court did not mention these things because it did not enjoin them. The Court now clarifies that—consistent with the preliminary injunction order, and now the plain language of this order—the NCAA is enjoined from prohibiting Plaintiffs and Class Members from competing in a fifth season of collegiate athletics under the Rule (as defined in the preliminary injunction order) or any NCAA Bylaw." ECF No. 41 at 5-6.

2026. *See, e.g.,* ECF No. 45. Plaintiffs have separately filed a motion to enforce the Court's preliminary injunction order. *See* ECF No. 46. Both motions are fully briefed.[2]

## II.    LEGAL STANDARD

In reviewing requests to stay issuance of a preliminary injunction, courts consider the following factors, of which the first two are "the most critical": "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation modified). *See also Crookshanks as next friend of C.C. v. Elizabeth Sch. Dist.*, No. 1:24–cv–03512–CNS–STV, 2025 WL 1000774, at *1 (D. Colo. Apr. 3, 2025) (observing the "substantial overlap" between these *stay* factors and the "factors governing preliminary injunctions" (citation modified)). "A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926) (citation modified).

## III.    DISCUSSION

The Court addresses *Nken*'s *stay* factors in turn, concluding that the NCAA has failed to meet its burden of showing that a stay of the Court's preliminary injunction is warranted.[3]

---

[2] The Court shall address Plaintiffs' enforcement motion in a forthcoming order.

[3] While the NCAA has filed an appeal with the Tenth Circuit, and likewise sought emergency relief regarding the Court's preliminary injunction order in an appellate posture, *see* Case No. 26–1309, Dkt. No. 9, the Court retains jurisdiction to issue this order on the NCAA's stay motion filed in this Court. *See, e.g., Universitas Educ., LLC v. Avon Cap., LLC*, 124 F.4th 1231, 1243 (10th Cir. 2024) ("First, federal rules of

### A.  Strong Showing of Likelihood of Success on the Merits

The NCAA argues that it is "substantially likely to succeed on appeal," ECF No. 43 at 4, for numerous reasons, including that: Plaintiffs "conceded that the challenged restraint is lawful," *id.* (citation modified); each step of the "rule of reason supports the NCAA," *id.* at 6 (citation modified); Plaintiffs "did not define a relevant market," *id.* (citation modified); Plaintiffs "did not show anticompetitive effects," *id.* at 8 (citation modified); prospective implementation of "age-based eligibility is procompetitive," *id.* at 10 (citation modified); and Plaintiffs failed to provide "less competitive means to achieve the NCAA's procompetitive efficiencies," *id.* at 12 (citation modified). The Court considers and rejects these arguments in turn.

*First*, as to Plaintiffs' purported "concession" as to the lawfulness of the Rule's restraints, *see id.* at 4, Plaintiffs correctly argue in their opposition that they have made no such concession that means their "claim should have failed at the threshold," *id.* Instead, "[Plaintiffs] did not challenge the NCAA adopting an age-based eligibility model; what they challenge is the membership's decision to withhold that from one cohort." ECF No. 50 at 8. *See also id.* ("A plaintiff who does not challenge that a rule may be adopted does not also agree that it may be applied to everyone but themself.").

And the NCAA is wrong to argue, as the Court explained in its preliminary injunction order, that the Tenth Circuit's decision in *Christy Sports* applies so forcefully as to foreclose Plaintiffs' challenge altogether. *Compare* ECF No. 43 at 5, *with Wisne*, 2026

---

civil and appellate procedure permit district courts to suspend, modify, restore, or grant an injunction while an appeal is pending. Second, district courts are permitted to enter orders meant to preserve the status quo pending appeal." (citation modified)).

WL 2214234, *19 n.27. The Court incorporates its prior analysis of *Christy Sports* here. But to elaborate: the NCAA can, along with its membership, certainly "change its rules." ECF No. 43 at 5. Yet *Christy Sports* does not provide the NCAA with a blank check when doing so. While "[t]he antitrust laws should not be allowed to stifle a business's ability to experiment in how it operates, nor forbid it to change course upon discovering a preferable path," *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1198 (10th Cir. 2009), and such laws should not "lock" a business into prior "business decision[s]," *id.*, the question is not whether antitrust scrutiny in this case should impermissibly hold the NCAA to "an initial decision to adopt one business model [that] would lock [it] into that approach and preclude adoption of the other at a later time," *id.* The question is whether the Rule and its implementation amount to an unreasonable restraint under Section 1 of the Sherman Act. *Cf. id.* at 1199 ("[T]he § 1 claim is no longer at issue and only § 2 claims remain."). "Stifling" the NCAA, in the words of *Christy Sports*, is altogether different from enjoining conduct in a preliminary posture that Plaintiffs have shown is likely unlawful under the Sherman Act.

**Second,** turning to the Court's *rule of reason* analysis in its preliminary injunction order, the NCAA fails to persuade that a stay is proper. The Court presumes familiarity with the governing *rule of reason* doctrinal framework in its subsequent analysis. *See, e.g., Wisne*, 2026 WL 2214234, at *9 (explaining *rule of reason* and collecting cases in support of explanation).

**Defining the Relevant Market.** The Court agrees with the NCAA that Plaintiffs were required to first define the relevant market. It said as much in its preliminary

injunction order. *See id.* at *10. But, in a way that recalls the NCAA's own opposition in the parties' preliminary injunction briefing, the NCAA recites several federal appellate decisions that have "reversed or vacated preliminary injunctions" against it, ECF No. 43 at 6, and argues that under them Plaintiffs did not "clear [the] bar" of defining their market (and thus that a stay is required). *Id.* at 7.

Respectfully, the Court rejected this argument in its preliminary injunction order and does so again here for the same reasons. The Court likewise incorporates its *market definition* analysis here. Contrary to the NCAA's suggestion, Plaintiffs put forth sufficient evidence of the relevant market from which the Court could then make factual findings regarding that market (and which the Court then made). *See Wisne*, 2026 WL 2214234, at *10 ("First, antitrust plaintiffs must put forth sufficient evidence of the relevant market. Second, courts must themselves make factual findings regarding the market." (citation modified)). And the NCAA's challenge to the declaration of Dr. Berri in its stay motion is unpersuasive.[4] Dr. Berri *did* provide evidence of current market realities, with evidence as current as 2025. *See, e.g., id.* To the extent that the NCAA challenges Dr. Berri's declaration as failing to provide data from 2026, the Court explained why this was no impediment to Plaintiffs meeting their *market definition* burden after the Court compared the entirety of Dr. Berri's statements and attendant evidence with the declaration of the NCAA's contrary expert, Dr. Backus. *See id.* at *13 n.16. Notably, the NCAA does not

---

[4] From a *stay* perspective and in thinking about the applicable *clear error* standard of review, discussed further below, Plaintiffs correctly observe that when it comes to evidence such as Dr. Berri's declaration, and Dr. Backus's competition declaration, the Court, as a district court, "has the exclusive function of appraising credibility, determining the weight to be given testimony, drawing inferences from facts established, and resolving conflicts in the evidence." *Obeslo v. Great-W. Life & Annuity Ins. Co*, 6 F.4th 1135, 1148 (10th Cir. 2021) (citation modified); ECF No. 50 at 10.

contend with a Supreme Court case that the Court cited in its own order, where the Supreme Court considered virtually identical evidence in its *market definition* analysis that the Court considered here, and concluded from that evidence a district court did not err in reaching its own *market definition* conclusion. *See Int'l Boxing Club of N. Y., Inc. v. United States*, 358 U.S. 242, 250–51 (1959).

In sum, the NCAA attempts to relitigate the Court's prior determination as to Plaintiffs' showing as to *market definition.* But that attempt is unpersuasive, especially where the cases that the NCAA cites in support explicitly *disclaimed* creating a "floor" for *market definition* evidence; Dr. Berri provided ample support for his conclusions, *cf.* ECF No. 52 at 5; the Court considered his conclusions alongside all other evidence in the preliminary injunction record, including the declaration of Dr. Backus; and the Supreme Court, as indicated above, *see International Boxing Club*, 358 U.S. at 250, has endorsed consideration of the evidence that Dr. Berri put forward in his own analysis, *see Robinson v. Nat'l Collegiate Athletic Ass'n*, 172 F.4th 271, 294 (4th Cir. 2026) ("We *are not* specifying the exact quantity of evidence required for an antitrust plaintiff to meet their burden of proof to establish market definition to be granted a preliminary injunction." (citation modified)). Especially where Dr. Berri's evidence was quantitative and economic in nature.

***Anticompetitive Effects.*** The NCAA faults Plaintiffs for putting forward "*no evidence* of anticompetitive effects." ECF No. 43 at 8 (emphasis added). That's hyperbolic and wrong. The Court explained as much in its prior order. *See Wisne*, 2026 WL 2214234, at *16 ("[Plaintiffs] have put forward evidence showing that the Rule will reduce output,

8

decrease wages, and decrease quality (i.e., the number of qualified, seasoned athletes) in the relevant market."). This evidence demonstrates *exactly* what the NCAA says Plaintiffs failed to show: harms to "output, price, or quality" in the market of NCAA Division I athletes. ECF No. 43 at 8. For example, as explained in the Court's prior order, the Rule will have anticompetitive effects by harming exactly these things by affecting "competition as a whole within the relevant market, insofar as the Rule will affect Plaintiffs and class members directly by excluding them from the market [and] will also harm competition within the entire market for the same reason." *Wisne*, 2026 WL 2214234, at *16 (citation modified). The Court also rejected the NCAA's reiterated *roster caps* argument as that argument attends *anticompetitive effects* and does so again. *See id.* at *16.

As for a theory of "indirect anticompetitive effects," the Court's *anticompetitive effects* analysis did not *singularly rely* on what the NCAA calls "indirect" effects. *Compare* ECF No. 43 at 9, with *Wisne*, 2026 WL 2214234, at *16 ("[Plaintiffs] have put forward evidence showing that the Rule will reduce output, decrease wages, *and* decrease quality (i.e., the number of qualified, seasoned athletes) in the relevant market." (emphasis added)). In other words, Plaintiffs certainly showed, at a minimum—as they must—that they, as athletes in the market, are harmed by the Rule and its implementation, *as well as* the market itself. *See, e.g., Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018). And Plaintiffs persuasively explain why the cases that the NCAA marshals in its *stay* motion are inapposite. *See, e.g.,* ECF No. 50 at 15. This is not simply an issue of "athletic competition," *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325

9

F.3d 712, 720 (6th Cir. 2003), that fails to raise antitrust concerns as to "economic injury to the market," *id.*, as adequately defined and supported by Plaintiffs.

At bottom, the Court agrees with Plaintiffs, *see* ECF No. 50 at 14–15, that they met their preliminary injunction burden of showing they are likely to succeed on the merits of showing that the Rule and its implementation have an unlawful, anticompetitive effect on a defined market. They have done more, in the NCAA's words, than "suggest" that "competition on the field would be harmed by removing experienced student-athletes." ECF No. 43 at 10 (citation modified). Thus, the NCAA fails to persuade the Court's prior analysis was flawed, or conversely persuade that it has met *its* burden in this stay posture of showing that it is itself likely to succeed on the merits of its appeal of the Court's preliminary injunction order. *Cf. Nken*, 556 U.S. at 434.

***Prospective Implementation is Procompetitive.*** Next, the NCAA argues that its eligibility rules, including the Rule at issue in this case, are procompetitive because they preserve the eligibility of student athletes to compete in college athletics. *See* ECF No. 43 at 11. And in the NCAA's words, "[w]ithout the ability to set the rules about who is eligible—and without athletes moving on once their eligibility has expired—college sports would not exist." ECF No. 43 at 11. But the NCAA has failed, despite its *stay* arguments, to persuade that it met its *procompetitive* burden at the rule of reason's second step. It makes the same arguments in this *stay* posture that it did in response to Plaintiff's preliminary injunction motion, and the Court rejects them again. *See id.*

The Court makes one note to supplement its prior analysis of this issue (which also applies to its *public interest* analysis of the NCAA's stay motion). The Court is sensitive

to the changes wrought to member schools' rosters because of the NCAA's conduct that the Court enjoined following Plaintiffs' showing that they met all four of their *preliminary injunction* burdens. Recall, regardless, that on one side of the ledger is an entire class of students' potential ineligibility to play sports due to the NCAA's Rule and implementation—certainly a form of irreparable harm. But for all the harm the NCAA identifies, both throughout its motion and as a specific part of its *procompetitive* discussion, *see* ECF No. 43 at 12, this is not a case like one where the Supreme Court has noted overwhelming reasons for why granting injunctive relief is improper. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (observing injunction would affect "complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force, which are essentially professional military judgments."). To be sure, while the Court may not be an industry expert, as it readily acknowledged in its prior order, *see Wisne*, 2026 WL 2214234, at *20, this is not a case where the Court is called upon to consider—or realize that it is not in a position to even conceivably consider—the magnitude of "briefings that may describe new and serious threats to our Nation and its people." *Winter*, 555 U.S. at 24 (citation modified).[5] Thus, while the Court reiterates its sensitivity to the "extraordinary" nature of any injunctive relief, *see id.*, it underscores—as observed at the outset of this order—that the NCAA finds itself in a position of its making. Further, as set forth in the Court's preliminary injunction order, compliance with antitrust law *serves* the public interest. *See Wisne*, 2026 WL 2214234,

---

[5] In further contrast to *Winter*'s cautionary remarks, the Court did begin its analysis of the parties' prior arguments with evidence they submitted in support of them.

at *22 ("Free and fair competition in labor markets is essential to the American economy

. . . . The purpose of the antitrust laws is to protect the public." (citation modified)).

*Less Anticompetitive Means.* Finally, the NCAA challenges Plaintiffs' showing of

less anticompetitive means. *See* ECF No. 43 at 12. Central to this argument is the NCAA's

characterization of Plaintiffs' arguments as asking the Court to "make a different policy

judgment" than one reached by the NCAA. *Id.* The Court has explained why this is *not*

what Plaintiffs have argued, and why this is not the premise from which they seek relief.

They challenge the NCAA's Rule and its implementation as an antitrust violation under

Section 1 of the Sherman Act. And the Court explained in its prior order why enjoining the

NCAA as it did is not simply coming down on the opposite side of a policy dispute, but is

the outcome of reasoned application of well-settled antitrust doctrinal principles.

\* \* \*

The Court makes three concluding observations as to the NCAA's first *stay* burden.

*First*, it essentially rehashes arguments that it previously made, and had rejected, in the

Court's preliminary injunction order. These arguments fail to persuade now as they did

then. *Second*, the Court is tasked with asking whether the NCAA has made a strong

showing that it is likely to succeed on the merits of its appeal of the Court's prior order.

*See, e.g., Nken*, 556 U.S. at 434; *Francois v. Wilkinson*, 141 S. Ct. 652, 655 (2021)

(Sotomayor, J., dissenting from denial of application for stay). And *third*, in seeking

appellate relief the NCAA would be required to show that the Court's legal conclusions

were erroneous under a *de novo* standard of review, as well as that the Court's factual

findings were clearly erroneous. *See, e.g., State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021).

Beyond the NCAA's evocation of *Christy Sports*, which does not dispose of Plaintiffs' case, the NCAA in its *stay* motion hardly contends with this standard of review.[6] And notably, the majority of its first *stay* factor arguments attend the Court's *factual findings. See* ECF No. 43 at 8 ("Plaintiffs also presented *no evidence* of anticompetitive effects." (citation modified)). The Court's conclusions, set forth above, are bolstered by the NCAA's failure to explain how the Court's findings of fact were clearly erroneous, or lacked a rational basis in the preliminary injunction record. *See, e.g., Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245, 1254–55 (10th Cir. 2022); *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015); ECF No. 50 at 8.

Accordingly, the NCAA has failed to meet its first *stay* factor burden. While the Court's analysis could conclude here, it proceeds to explain why the NCAA has failed to meet its burdens under the remaining *stay* factors.[7]

## B. Irreparable Harm

The NCAA argues, as it did before, that absent a stay it will be harmed, as will its member schools, and other students outside of the Class affected by the preliminary

---

[6] In reply, the NCAA contends that Plaintiffs wrongly "recharacterize" all of its *rule of reason* arguments as demanding *clear error* review. ECF No. 52 at 5. Some of the NCAA's arguments, such as its argument that *Christy Sports* is on point, are legal in nature. The Court simply observes that, regardless of how the parties understand their competing arguments, as a matter of appellate law, the standard of review governing the Court's preliminary injunction order is well-settled.

[7] The Court notes that even if the NCAA could meet its burden as to the other *stay* factors, because it has not met its *first factor* burden that its motion may still be denied on this basis alone. Particularly where "[i]t is not enough that the chance of success on the merits be better than negligible," and the NCAA must show "more than a mere possibility of relief," *Nken*, 556 U.S. at 434.

injunction. *See* ECF No. 43 at 12. As for these other students, the NCAA again cites their reliance interests on the Rule and its implementation as previously planned. *See id.* at 13. The Court disagrees with the NCAA that it has met its *irreparable harm* burden in this *stay* posture. Even assuming that the Court's injunction order may "drastically alter the status quo," *id.* at 13, the Court agrees with Plaintiffs that—as explained above— the scope of this "alteration" is attributable to the NCAA's own rulemaking and decisions, *see* ECF No. 50 at 16. *Cf.* ECF No. 43 at 13 ("[T]he NCAA carefully considers the consequences to its member schools and student-athletes, basing its ultimate decisions on these calculations."). At bottom, the NCAA cannot meet its *irreparable harm* burden. Especially where, as Plaintiffs observe, the NCAA offers no evidentiary support attached to its *stay* motion in support of its *irreparable harm* argument. *See, e.g.,* ECF No. 50 at 15; *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 682 (N.D. Cal. 2020) ("[D]efendants have not submitted *evidence* of actual burdens or harms since imposition of the preliminary injunction and their motion relies on assumptions and projections." (citation modified)).

## C. Plaintiffs' Harm Absent a Stay

The NCAA argues that Plaintiffs will not be harmed absent a stay. *See* ECF No. 43 at 14; *but see id.* at 14 (arguing that Plaintiffs face a "minimal harm"). Nonsense. The Court rejected this argument in its preliminary injunction order and does so again here. The Court need not dwell on the NCAA's argument that Plaintiffs "identified *nothing* critical to participation" in the upcoming season, ECF No. 43 at 14 (emphasis added), when they did precisely that. *See Wisne*, 2026 WL 2214234, at *20. Thus, the NCAA has not met its burden under this factor. *See, e.g., Crookshanks*, 2025 WL 1000774, at *6 (concluding

that defendant did not meet *third factor* burden where court "previously held" that plaintiffs would suffer "irreparable injury" absent issuance of preliminary injunction (citation modified)).[8]

### D. Public Interest

Finally, the NCAA argues that the public interest favors a stay. *See* ECF No. 43 at 14. According to the NCAA, the certified class may "number in the many thousands," and allowing class members to compete would affect other athletes' reliance interest in the Rule's implementation, *see id.* Moreover, the Court's injunction "hamstrings the NCAA's ability to govern collegiate athletics in an orderly fashion." *Id.* at 15.

The Court acknowledges authority cited by the NCAA that appears to support its position. But in one such case, the plaintiff only sought relief for himself on a limited record. *See Coley v. Nat'l Collegiate Athletic Ass'n*, 792 F. Supp. 3d 634, 648 (E.D.N.C. 2025) ("Coley has offered little evidence beyond his own experience to support his request for an extraordinary, mandatory preliminary injunction."). That is unlike the case here, where the Court had sufficient evidence from which to adjudicate Plaintiffs' motion. And the Court reiterates that the "public interest lies," *Nken*, 556 U.S. at 434, in ensuring compliance with federal antitrust law, *see Wisne*, 2026 WL 2214234, at *22, and ensuring that competition is fostered rather than foreclosed.

\* \* \*

---

[8] The Court again notes the *clear error* standard of review that the NCAA confronts in both its appeal and *stay* motion. To the extent, therefore, that the NCAA argues that Plaintiffs did not put forth evidence that they need eligibility to continue their education, there is certainly a rational basis in the record for concluding that Plaintiffs do need such eligibility to continue their education. For instance, Plaintiff Jeffries submitted in her declaration that "[w]ithout athletic eligibility, I will lose my athletic scholarship." ECF No. 19-4 at 5.

The Court reiterates that it "take[s] seriously" the NCAA's arguments as to the effect of the Court's prior order. ECF No. 52 at 8. But the Court likewise reiterates that its task now, as previously, was to consider burdens allocated to the parties in seeking *injunctive* and *stay* relief. In doing so, Plaintiffs met their burdens, whereas the NCAA has not. For this reason the Court granted Plaintiffs an injunction and denies the NCAA's motion.

## IV.    CONCLUSION

Consistent with the above analysis, Defendant National Collegiate Athletic Association's (NCAA's) Emergency Motion for Administrative Stay and Motion to Stay Preliminary Injunction Pending Appeal, ECF No. 43, is DENIED.

DATED this 10th day of August 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge